PAUL TUCKER, Plaintiff in Error,

*v.*

INTERNATIONAL SALT COMPANY, Defendant in Error.

349 S. W. 2d 541.

(*Nashville,* December Term, 1960.)

Opinion filed September 6, 1961.

Bearman & Bearman, Memphis, for plaintiff in error.

John H. Wilbur, of Armstrong, McCadden, Allen, Braden & Goodman, Memphis, for defendant in error.

Mr. Justice Swepston, delivered the opinion of the Court.

The only question for decision is whether or not under the stipulated facts the defendant in error, the International Salt Company, is doing business in the State of Tennessee so as to be subject to the jurisdiction of the courts of this State.

The trial court held that the Salt Company was not so doing business, sustained the plea in abatement and held that the attempted service of process on the travel-

ing salesman of the Salt Company who resides in Shelby County to be void.

In the interest of brevity, the stipulation of facts will be somewhat abbreviated. Paul Tucker sued the Salt Company for breach of contract and on a *quantum meruit* for damages for breach of a contract between Tucker and the Salt Company. Service of process was attempted by serving the same upon Lloyd T. Williams, Jr., the sole salesman who represents the International Salt Company for sale to wholesale grocers and manufacturers in Shelby County, Tennessee. The Salt Company is a New Jersey corporation with its principal office in Pennsylvania; there are no officers or directors of the Salt Company in the State of Tennessee and at the time of the service of process and since that time Lloyd T. Williams, Jr., was neither an officer or other head of the Salt Company, nor was he a director of that Company.

Said Williams has a written contract with the Salt Company to sell its products, receives a salary of $526 per month plus a bonus if sales exceed a minimum quota; he carries and distributes a card upon which there is inscribed in large black letters International Salt Company Clarks Summit, Pennsylvania, and in smaller letters Lloyd T. Williams, Jr., Special Merchandising Representative; he uses and distributes literature supplied by the Salt Company to aid him in his sales of its products, which literature he keeps in the automobile furnished to him by the Salt Company, which automobile is owned by the Salt Company, registered in Shelby County, Tennessee, and Williams is given an expense allowance for the operation and upkeep of said automobile; Williams signs order blanks when he receives orders from a customer but

no contracts between the Salt Company and wholesale or retail dealers in the State of Tennessee are made but said orders, which are sent to the Salt Company office by either Williams or the customer, are expressly designated as "offers", which must be accepted by the International Salt Company upon receipt of it in Pennsylvania before becoming binding; payments by customers for products delivered to them are made directly to the Salt Company in Pennsylvania; Williams carries samples of his Company's products, he is allowed to handle only the Salt Company's products; he makes a weekly report; he has called on two or three past due accounts, and in one case was given a check in payment of a past due account payable to the Salt Company which he forwarded directly to the Company; his immediate superior resides and has offices in New Orleans, Louisiana and he has no superior residing in the State of Tennessee; Williams has no authority to adjust orders for the Salt Company, as adjustments are handled through the New Orleans office, but he can pass on to the customer the Company's position on any matter that needs adjustment if requested to do so by the Company; Williams spends about four days a month on the average soliciting orders in Tennessee; all invoices sent with products from the Salt Company to Shelby County bear the name of Williams as salesman; the Salt Company during the year 1960 made approximately $10,000 from sales made to wholesale grocery houses in the Western District of Tennessee alone; Williams occasionally suggests to the Salt Company new ideas and methods in selling the Company's products in this area.

The attempted service of process was made under T.C.A. sec. 20-217 providing as follows:

"Service on corporate officers.—Service of process on the president or other head of a corporation, or, in his absence, on the cashier, treasurer, or secretary, or, in the absence of such officers, on any director of such corporation, shall be sufficient. If the action is commenced in the county in which the corporation keeps its chief office, the process may be served on any one of the foregoing officers, in the absence of those named before him. If neither the president, cashier, treasurer, or secretary resides within the state, service on the chief agent of the corporation, residing at the time in the county where the action is brought, shall be sufficient."

In the absence of any of the officers or directors named in said statute, service was had on Williams as the chief agent of the corporation residing in the county at the time where the action is brought. This statute is construed to apply to foreign corporations as well as to domestic ones. *Stonega Coke & Coal Co. v. Southern Steel Co.*, 1910, 123 Tenn. 428, 131 S.W. 988, 31 L.R.A., N.S., 278, and other cases cited under note 3 in the Code to said section.

The insistence is made in behalf of Tucker, plaintiff in error, that "if Williams was then, in fact, such a 'chief agent', the defendant in error was properly served and was before the trial court if the defendant in error was 'doing business' in the state."

It is next urged that the Salt Company was doing business on two theories. The first is that T.C.A. sec. 20-220 provides as follows:

"Foreign corporations subject to actions.—Any corporation claiming existence under the laws of the Unit-

ed States or any other state, or of any country foreign to the United States, or any business trust found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws thereof liable to be sued, so far as relates to any transaction had, in whole or in part, within this state, or any cause of action arising here, but not otherwise. Any such corporation or trust having any transaction with persons, or having any transaction concerning any property situated in this state, through any agency whatever, acting for it within the state, shall be held to be doing business here within the meaning of this section.''

It is then stated in the brief that ''it is clear from the stipulated facts that defendant in error was 'doing business' under this test, that the contract between plaintiff in error, a Tennessee resident, and defendant in error for personal services in aid of one of the Company's Shelby County salt brokers (see declaration, R. 3), 'relates to a transaction had, in whole or in part, within this State.' ''

This insistence must be overruled for the reason that the stipulation controls and it fails to show that there was a contract for personal services in aid of one of the Company's Shelby County salt brokers. Therefore, we cannot determine whether or not this alleged contract relates to any transaction had in whole or in part within this State.

■ Again, it is insisted that the Salt Company was doing business in Tennessee so as to subject it to service of process, as attempted, because it is alleged that the

stipulation shows other activities beyond the mere solicitation of others in interstate commerce.

Counsel relies upon the following cases to sustain his argument on the facts: *Life Insurance Co. v. Spratley,* 1897, 99 Tenn. 322, 42 S.W. 145; *Alwood & Greene v. Buffalo Hardwood Lumber Co.,* 1925, 152 Tenn. 544, 279 S.W. 795; *Interstate Amusement Co. v. Albert,* 1913, 128 Tenn. 417, 161 S.W. 488; *United Artists Corporation v. Board of Censors of City of Memphis,* 1949, 189 Tenn. 397, 225 S.W.2d 550; *Radford v. Minnesota Mining & Mfg. Co.,* D.C.E.D. Tenn.1955, 128 F.Supp. 775. We think all of these cases can upon reading same be quickly distinguished from the factual situation herein. There is in each one or more factors amounting to doing business in Tennessee. In view of the fact that counsel relies rather heavily on the Alwood & Greene case, supra, we think it might be well to point out the fact that, although the agent or representative of the New York corporation made the contract in Georgia, he was nevertheless a general agent and the company was represented by him in a large volume of business throughout the southern territory in the contracts for the purchase of lumber and a large part of the contracts related to business with reference to Tennessee lumber. In other words, he was a general agent authorized to execute a binding contract wherever he might be. Quite to the contrary, the salesman for the Salt Company here had no authority to make any contract. He was a mere soliciting agent. Everything that Williams did was incidental and conducive to the promotion of the interstate sales and had no local aspects whatever. While it is true that they were not isolated or exceptional transactions and on the other hand, were a regular course of activity, that fact is rele-

vant only when there is something else in connection with it which tends to localize the activities and to evidence the "presence" in some sense of the corporation in the state. Again, there can be no substantial difference between providing an automobile for the salesman's use and the expenses of operation and maintenance, rather than have him use his own automobile and make him an allowance for the expenses of the operation of same; it is not to be supposed that very many instances of a salesman paying his own traveling expenses will be found unless the same is covered by an adequate salary or commission.

The fact that in two or three instances he has called on delinquent customers and once received a check payable to the Company is not of any importance; it was not a regular course of conduct and not shown to be a part of his contractual duties.

Referring again to the Alwood & Greene case, supra, the opinion does not contain a factual detail but refers the reader to the record of the case. The authority for the ruling is, however, *International Harvester Co. of America v. Commonwealth of Kentucky*, 234 U.S. 579, 34 S.Ct. 944, 945, 58 L.Ed. 1479, a criminal proceeding against the corporation for violation of the state antitrust laws. The service of process was attacked under the due process and commerce clauses of the Federal Constitution, Amend. 14; art. 1, sec. 8, cl. 3, on the ground the defendant was not doing business and hence not subject to such service.

Held, "In the case now under consideration there was something more than mere solicitation. In response to the orders received, there was a continuous course of

shipment of machines into Kentucky. There was authority to receive payment in money, check, or draft, and *to take notes payable at banks in Kentucky.''*

Whether or not state statutes run afoul of the due process and commerce clauses of the Federal Constitution present, of course, federal questions, as has long been declared to be the rule. But the Supreme Court of the United States has never undertaken to lay down any definite concept as to what amounts to doing business, or under what circumstances doing business will justify service of process in the forum jurisdiction. 23 Am.Jur., Sec. 361, p. 335 et seq., especially Sec. 363, p. 341.

A late opinion of that Court, of which counsel did not have the benefit when preparing their excellent briefs, is *Eli Lilly & Co. v. Sav-on Drugs, Inc., et al.,* 1961, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288. This was not a service of process case but was a licensing case of a foreign corporation, as it affected the right to bring suit. In the dissenting opinion of Mr. Justice Douglas, concurred in by Messrs. Frankfurter, Whittaker and Stewart, they refer to two cases relied on in the instant case by Tucker. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223, and another case *Hanson v. Denckla,* 357 U.S. 235, 250-255, 78 S.Ct. 1228, 2 L.Ed.2d 1283. The theory of the first two of those cases, which hold that service of process may be had on the foreign corporation, is that where the facts show that the activities of the corporation reveal a ''substantial connection'' with the state, valid service may be made. This is also the theory in

behalf of Tucker in this case. In the third case no such showing was made.

In *International Shoe Co. v. State of Washington,* supra, it was a Delaware Corporation not qualified in the State of Washington to do business, had no stock of merchandise in Washington and all deliveries were in interstate commerce and no salesman had authority to make any contracts or collections for the corporation. However, the State of Washington sued to collect the unemployment state tax on the Shoe Company salesmen in the state. The Court held that service on a salesman was valid process because its "presence" in the state was sufficient under the circumstances to make it reasonable and just according to traditional concepts of fair play and substantial justice to permit the state to enforce the obligation which the Shoe Company had incurred there, i. e., the unemployment compensation tax.

The *McGee v. International Life Ins. Co.,* supra, and *Travelers Health Assn. v. Commonwealth of Virginia,* 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, are foreign insurance company cases writing or attempting to write or to solicit policies in interstate transactions, but to avoid service of process in the jurisdiction of the insured. A very important public policy is involved in these situations for the protection of the local citizen.

To be sure the United States Supreme Court has come a long way from the original personal service requirement of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565. There are numerous cases since then showing a liberalization or broadening of the rule under various circumstances to permit or require service on foreign corporations where it has manifested its "presence" in the forum

state. See cases, supra. Read: *Abel v. Albina Engine & Machine Works,* 10 Cir., 1960, 284 F.2d 510, 512. Very little besides mere solicitation of interstate orders has been considered sufficient to sustain service of process in these interstate sales transactions. *Scholnik v. National Airlines, Inc.,* 6 Cir., 1955, 219 F.2d 115.

In *Hanson v. Denckla,* supra, however, at page 1238 of 78 S.Ct., it is said:

"But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. *Vanderbilt v. Vanderbilt,* 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456."

We are of opinion the instant case does not on this stipulation present anything more than a mere soliciting agent.

Affirmed.

All concur.