FIRST FLIGHT COMPANY

v.

NATIONAL CARLOADING COR-PORATION

v.

BOWMAN TRANSPORTATION, INC., St. Louis-San Francisco Railway Company, and Atchison, Topeka and Santa Fe Railway Company.

Civ. A. No. 3761.

United States District Court
E. D. Tennessee, S. D.

Oct. 4, 1962.

Cameron, Turner & Oehmig, Chatta-
nooga, Tenn., for plaintiff.

Whitaker, Hall & Haynes, Chatta-
nooga, Tenn., for defendant National
Carloading Co.

Blaine Buchanan, Chattanooga, Tenn.,
for third-party defendant Bowman
Transp., Inc.

Witt, Gaither, Abernathy, Caldwell &
Wilson, Chattanooga, Tenn., for third-
party defendant Atchison, T. & S. F. Ry.
Co.

FRANK W. WILSON, District Judge.

■ This case arises from the alleged damaging of a $110,000 shipment of golf clubs in transit from Chattanooga, Tennessee to Los Angeles, California. The principal suit is brought by First Flight Company, the owner of the clubs, against National Carloading Corporation, the company to which the clubs were originally delivered for shipping from Chattanooga. The complaint purports to state a claim under Title 49 U.S.C.A. § 20(11), and, possibly, under the common law as well, since diversity of citizenship, as well as the existence of a federal question, is alleged.[1]

National has filed a third-party suit against three companies alleged to have had custody of the clubs consecutively between Chattanooga and Los Angeles. The third-party complaint charges that any damage to the clubs occurred while the same were in the custody of one or another of these three companies, and that such company is liable to National, under either Title 49 U.S.C.A. § 20(12), or the common law, "for any loss, damage or injury with respect to which Third-Party Plaintiff is liable to the original Plaintiff."

One of the third-party defendants, Atchison, Topeka and Santa Fe Railway

1. The allegations of diversity are, however, inadequate. The complaint merely states that

"The plaintiff is a corporation organized and existing under the laws of the State of Tennessee, and the defendant is a foreign corporation, a citizen of the State of Missouri * * *."

An express allegation should have been made that the defendant is incorporated or organized and existing under the laws of Missouri, and the principal place of business of each party should have been alleged. Title 28 U.S.C.A. § 1332(c); Eubanks v. Krispy Kreme Donut Co., S.D. E.D.Tenn., 1961, 208 F.Supp. 479. In this case, however, it is immaterial whether there is or is not diversity of citizenship between or among the parties. See notes 12 and 13, infra.

Company, has moved to quash the service of process and dismiss the third-party action as to itself, upon the ground that Santa Fe does no business in Tennessee, and therefore is not subject to the jurisdiction of this Court. Santa Fe also seeks a dismissal for want of proper venue, upon the ground that it is neither incorporated, licensed to do, nor doing business within the Eastern District of Tennessee. Finally, Santa Fe has contended in oral argument that under Title 49 U.S.C.A. § 20(11) the third-party suit cannot properly be maintained against it in Tennessee, because it owns no railroad lines within this State.

■ Considering this last point first, it is sufficient to observe that as against Santa Fe the third-party suit is based upon Title 49 U.S.C.A. § 20(12) and the common law, and not upon 49 U.S.C.A. § 20(11), and that the latter section's requirement of lines within the state of suit does not apply to suits under the former section. Santa Fe's contention in this regard is therefore without merit, and will be overruled.

■ With regard to the venue objection, it appears that the great weight of authority deems a third-party suit ancillary to the original suit for purposes of venue, with the result that the usual venue requirements need not be met as to a third-party defendant.[2] Therefore, this ground of Santa Fe's motion will likewise be overruled.

A more difficult problem is presented by Santa Fe's challenge to the jurisdiction of the Court. With reference to this problem the parties have rather fully developed the general nature and extent of Santa Fe's business activities by affidavit and deposition.

■ It appears that Santa Fe is a corporation organized under the laws of Kansas, and operating railroad lines throughout most of the West and Southwest. It neither owns nor operates any lines in Tennessee, and it appears that no Santa Fe line is closer to Tennessee than Joplin, Missouri. Santa Fe is not licensed to do business in Tennessee, and does no business here except such as may be done by a single office which it maintains in Memphis, Tennessee, and which is staffed by two employees of Santa Fe, a "District Agent" and a "clerk."[3] Service of the third-party process in this case was made upon one of these employees, the District Agent,[4] though neither has been designated by Santa Fe as an agent to receive process.

The Memphis office consists of two rooms, each 12 by 15 feet. It has been maintained in Memphis continuously since 1953. The employees in the office

---

2. 1A Barron & Holtzoff, Federal Practice and Procedure, sec. 424; 3 Moore, Federal Practice, sec. 14.25 et seq.

3. It appears that National, the third-party plaintiff, is a wholly owned subsidiary of Chanslor-Western Oil and Development Company, which in turn is a wholly owned subsidiary of Santa Fe, the third-party defendant, and that "one or more of the * * * men who were directors of National Carloading Corporation on March 20, 1962, were on January 1, 1962, and presumably still are directors of fifteen other affiliated companies of" Santa Fe. It further appears that National is one of Santa Fe's principal customers in Tennessee.

 In the absence, however, of a showing that the books and records of a parent and a subsidiary corporation are mingled, and that the parent exercises such control over the subsidiary that the

subsidiary should be deemed the agent of the principal, the mere relationship of parent and subsidiary does not warrant the conclusion that the parent is doing business wherever the subsidiary is doing business. 2 Moore, Federal Practice, sec. 4.25.

4. There is some confusion as to just which employee was served. The Marshal's return upon the third-party summons recites service upon "Thomas D. McKay, Steno Clerk for the defendant Atcheson, Topeka & Santa Fe Railway Co." The District Agent, however, Charles H. White, in an affidavit filed with the motion, states that he is "the C. H. White upon whom service of process was attempted * * *." Moreover, in the affidavits, briefs and oral arguments before the Court, both National and Santa Fe have assumed for purposes of this motion that Mr. White was in fact the individual upon whom service was made.

solicit freight and passenger traffic which can be moved by Santa Fe to and from points in the Memphis area, but make no contracts therefor. The office has approximately 400 "accounts" or clients within its area, some 85% of which are in Tennessee. The office receives credit for some 20,000 carloads of freight annually, which, according to the District agent, constitutes a "very small" percentage of Santa Fe's total business. The Assistant General Auditor of Santa Fe has certified that Santa Fe moved some 1,728,955 carloads of revenue freight during the year 1961.

The Memphis office processes no claims against Santa Fe, other than to forward them to the company's freight claims department. The employees have no authority to draw checks upon Santa Fe, which apparently maintains no bank account in Tennessee. It appears that Santa Fe retains no permanent counsel in Tennessee.

Turning now to the pertinent legal questions, the parties are in disagreement first as to whether the extent of the Court's jurisdiction over a foreign corporation is governed by federal law or by the law of Tennessee. Santa Fe contends that Tennessee law is controlling in this regard, while National argues that federal law is applicable.

The explanation for Santa Fe's contending that state law is pertinent on the question of jurisdiction is not far to seek. Federal law defines the extent to which the states may go, under the due process clause of the Fourteenth Amendment, in exercising personal jurisdiction over foreign persons and corporations.[5] But the states need not go—and frequently do not go—as far as the Constitution permits in authorizing their courts to exercise such jurisdiction.[6] In the present case, Santa Fe conceives that Tennessee has not gone as far as the Constitution would permit in providing for the exercise of personal jurisdiction over foreign corporations.[7] Therefore, Santa Fe urges the application of a state test in the present case, in support of its contention of a lack of jurisdiction.

■ Santa Fe's position is that the present case is at least partly a diversity case, and is therefore governed by state law under the principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. There is authority to support this contention,[8] but the Court is of the opinion that the authorities taking the opposite view are the more cogent and correct.[9] The gist of these latter authorities is to the effect that the extent of the personal jurisdiction of a federal court

"is to be considered so much a part of the make-up of a federal court that it is not lightly to be superseded, and the settled policy that

5. The cases, from earliest to latest, run from Pennoyer v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565 to Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

6. See Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L. Ed. 485.

7. In this Santa Fe may be correct. See Morgan and Handler, Procedure and Evidence—1961 Tennessee Survey (II), 15 Vand.L.Rev. 921, 933 et seq., commenting upon the case of Tucker v. International Salt Co., 209 Tenn. 95, 349 S.W.2d 541, and observing that the Tennessee Supreme Court there applied a "solicitation plus" test of jurisdiction which the United States Supreme Court adopted in

Green v. Chicago, B. & Q. Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, but rejected in favor of a more liberal test in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

8 The authorities upon each side of the question are reviewed in Jaftex Corporation v. Randolph Mills, Inc., 2 Cir., 282 F.2d 508, where the majority opinion took the position that federal law is controlling upon federal court jurisdiction, while Judge Friendly, concurring, was of the opinion that state law is applicable.

9. Jaftex Corporation v. Randolph Mills, Inc., supra, note 8; Green, Federal Jurisdiction In Personam of Corporations and Due Process, 14 Vand.L.Rev. 967, 977–80.

federal courts should apply state substantive law in diversity cases does not go to the extent of requiring the contrary." [10]

This view appears to have been tacitly followed in a number of diversity cases in this Circuit, where questions of jurisdiction were answered solely by reference to federal law.[11]

■ In any event, it does not appear that the present case is properly to be regarded as a diversity case. The original complaint is based at least partly upon a federal question under Title 49 U.S.C.A. § 20(11), as is the third-party complaint under Title 49 U.S.C.A. § 20(12). It cannot be said that these federal claims are plainly wanting in substance, and they therefore confer jurisdiction upon the Court to entertain the non-federal aspects of the case under the concept of pendent jurisdiction, and no additional basis of jurisdiction, such as diversity of citizenship, is required.[12] The same result is reached under the concept of ancillary jurisdiction, whereby no independent basis of jurisdiction is required to sustain a third-party suit, once jurisdiction of the principal suit is established.[13] Under either of these theories of pendent or ancillary jurisdiction, the third-party suit against Santa Fe would not be regarded as a suit based upon diversity of citizenship.

Santa Fe might also argue that Tennessee law is controlling upon the issue of personal jurisdiction because service was made upon Santa Fe's agent not under Rule 4(d) (3) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., but, pursuant to Rule 4(d) (7), under a state statute providing for service upon foreign corporations. Rules 4(d) (3) and 4(d) (7) are as follows:

"Rule 4(d). *Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows: * * *

"(3) Upon a domestic or foreign corporation * * * by delivering a copy of the summons and of the complaint to an officer, a managing or general agent. * * *

"(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

Thus Rule 4(d) (3) provides for a wholly federal method of service, while Rule 4(d) (7) adopts local methods to some extent, and Santa Fe might argue that the validity of service made under a state statute pursuant to Rule 4(d) (7) would be governed by state law.

■ Without passing upon the correctness of this hypothetical argument, not actually raised by the parties, it may be observed that service appears to have been made upon the District Agent in the Memphis office,[14] and that the District Agent would be regarded as a 'man-

---

10. Jaftex Corporation v. Randolph Mills, Inc., supra, note 8, at 512.

11. Lasky v. Norfolk & W. Ry. Co., 6 Cir., 157 F.2d 674; Bach v. Friden Calculating Mach. Co., Inc., 6 Cir., 167 F.2d 679; Scholnik v. National Airlines, Inc., 6 Cir., 219 F.2d 115.

12. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; United Mine Workers of America v. Meadow Creek Coal Company, 6 Cir., 263 F.2d 52.

13. Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338; Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 37 A.L.R.2d 1399.

14. See note 4, supra.

aging or general agent' within the meaning of Rule 4(d) (3), authorizing a wholly federal method of service, without reference to state law.[15]

For the foregoing reasons, the Court is of the opinion that the extent of the personal jurisdiction of the federal courts and the sufficiency of service of process under Rule 4(d) (3) is a matter governed solely by federal rather than state law. There is, however, a great deal of confusion as to just what the federal law is in this regard. Aside from cases which purport to limit federal court jurisdiction by state law, other cases are to be found which require as a prerequisite to the personal jurisdiction of a federal court over a foreign corporation that the defendant be "doing business" within the distict in which the court is held because the Fourteenth Amendment requires it, or because the Fifth Amendment requires it, or because venue statutes require it, or because the Court merely assumes that something requires it. Other courts require "doing business" not within the district but within the state in which the federal court sits, for equally diverse reasons. This confusion in the law compels reference to fundamental principles and authorities, if a rational and consistent explanation of federal court personal jurisdiction is to be found.

■ One fundamental principle of the Anglo-American law of jurisdiction is that a sovereignty has personal jurisdiction over any defendant within its territorial limits, and that it may exercise that jurisdiction by any of its courts able to obtain service upon the defendant. This principle has long been applied to the states under the due process clause of the Fourteenth Amendment.[16] In the case of corporations, the requirement of "presence" has given way to other standards such as consent to being sued within the state, "doing business" within the state, and finally to the having of such "minimum contacts with the state that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."[17] The basic principle, however, has remained unchanged.

■ What has frequently been overlooked is that this same basic principle has long been applied to the United States itself, so that the United States is deemed to have personal jurisdiction over any defendant within the United States.[18] Because of this oversight, and

---

15. See Scholnik v. National Airlines, Inc., 6 Cir., 219 F.2d 115, 120; Lone Star Package Car Co., Inc. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147, 152.

16. Pennoyer v. Neff, 5 Otto 714, 95 U.S. 714, 24 L.Ed. 565.

17. See International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154; Travelers Health Assn. v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 72 S.Ct. 413; McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228.
In the McGee case the Court observed that "In a continuing process of evolution this Court accepted and then abandoned 'consent,' 'doing business,' and 'presence' as the standard for measuring the extent of state judicial power over such [foreign] corporations." 355 U.S. at 222, 78 S.Ct. at 200.

It appears that the constitutional prerequisites for an exercise of personal jurisdiction over a non-resident individual are now substantially the same as those applying to a foreign corporation, and, in fact, that there is little if any reason for applying a test of jurisdiction in the case of individuals which is different than that which is applied in the case of corporations. See Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097; Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; Comment, State In Personam Jurisdiction—Conflicts, Constitution and the Court, 26 Tenn.L.Rev. 379.

18. Toland v. Sprague, 12 Pet. 300, 37 U.S. 300, 9 L.Ed. 1093; United States v. Union Pacific R. Co., 98 U.S. 569, 25 L.Ed. 143; Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119; Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185.

by analogy to the application of the basic principle to the states, there is a line of cases apparently denying the validity of an exercise of personal jurisdiction by a federal court over a defendant present within the United States unless the defendant is also present (or "doing business," etc.) within the district in which the court is held.[19] In other words, the restrictions of the Fourteenth Amendment upon state jurisdiction have been applied by these cases to federal jurisdiction. The anomaly here lies not only in overlooking the principle that the United States may exercise personal jurisdiction over any defendant within the United States, but also in limiting federal action by a constitutional provision applicable only to state action.

There has been some limited judicial recognition of this anomaly. Thus in Jaftex Corporation v. Randolph Mills, Inc., [20] Judge Friendly, in a concurring opinion stated that it would be proper under the due process clause of the Fifth Amendment for a federal statute or rule to authorize the federal courts to formulate their own standards concerning the activities of a foreign corporation within a state which would subject it to the jurisdiction of a federal court within that state, but concluded that no such statute or rule has been adopted, and that federal courts therefore can exercise jurisdiction over a foreign corporation only when a local state statute has provided the method and standard for doing so. Judge Friendly thus appears to have recognized the anomaly of limiting federal jurisdiction by the Fourteenth Amendment, but to have overlooked the fact that the jurisdiction of the United States extends to any defendant present within the United States.

Similarly, in Lone Star Package Car Co. v. Baltimore & O. R. Co., [21] the Court stated that the Fourteenth Amendment has no application to federal jurisdiction, but held that, upon analogy to "the broad statements of policy" in recent Supreme Court cases dealing with state jurisdiction under the Fourteenth Amendment, "the question of whether they [federal court cases] are to be tried in one locality or another is now to be tested * * * simply by basic principles of fairness." [22]

See Restatement, Judgments, sec. 5, comment b:

"The Federal Rules of Civil Procedure provide in Rule 4(f) that 'All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state.' The Congress could constitutionally provide that in actions brought in the federal courts service of process might be made anywhere within the United States; and although an action is brought in a federal district court in a particular State, the Congress could provide for personal service upon the defendant in another State. The inconvenience to defendants which would result is a sufficient reason for the failure of the Congress ordinarily to permit the exercise of jurisdiction in such a manner, although there is no constitutional objection to such exercise of jurisdiction. In certain cases, indeed, the Congress even in proceedings in personam has permitted service of process outside the territorial limits of the State in which the district court is held." (See note 32, infra.)

19. Green v. Chicago, B. & Q. Ry., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & R. Ry. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Bank of America v. Whitney Cent. Nat'l Bank, 261 U.S. 171, 43 S.Ct. 311, 67 L.Ed. 594; Louisville & N. R. R. v. Chatters, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711.

20. 282 F.2d 508, 516.

21. 212 F.2d 147.

22. 212 F.2d at 155.
 The Lone Star case is not the only case in effect to equate the test of personal jurisdiction with the doctrine of forum non conveniens. See Travelers Health Assn. v. Virginia, 339 U.S. 643, 70 S.Ct. 927; Latimer v. S/A Industrias Reunidas F. Matarazzo, 2 Cir., 175 F.2d 184. This practice was perhaps invited when the Supreme Court spoke of "traditional notions of fair play" in establishing the "minimum contacts" test of personal jurisdiction. But see note 35, infra.

Thus the Lone Star case disapproves the principle but not the practice of limiting federal jurisdiction by the Fourteenth Amendment, and overlooks entirely the principle of the nationwide jurisdiction of the United States.

Professor Thomas F. Green, Jr., of the University of Georgia, has suggested an explanation of federal court jurisdiction which avoids both aspects of the anomaly mentioned above.[23] Professor Green observes that while the due process clause of the Fourteenth Amendment does not apply to federal action, the similar clause of the Fifth Amendment does so apply. He suggests, therefore, that federal jurisdiction is governed by the Fifth Amendment much as state jurisdiction is governed by the Fourteenth Amendment.[24] He further suggests that the basic jurisdictional test developed in the recent Supreme Court cases dealing with state jurisdiction under the Fourteenth Amendment[25] is fundamentally sound and suitable for analogical application to federal jurisdiction under the Fifth Amendment. Professor Green therefore concludes that the test of United States jurisdiction should be to the effect that the United States may exercise personal jurisdiction over a corporation if the latter has such minimum contacts with the United States that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

In addition, Professor Green demonstrates that this same result is reached even if the practice of applying Fourteenth Amendment precedents to federal jurisdiction, as in the cases mentioned above,[26] is continued. This is so because modern Fourteenth Amendment precedents no longer require "doing business" within the territory of the court as a prerequisite to jurisdiction over a foreign corporation, but now permit the exercise of jurisdiction over any defendant having such minimum contacts with the state that the exercise does not offend traditional notions of fair play and substantial justice.[27] The Supreme Court has left no doubt but that the material constitutional inquiry in this regard concerns not contacts with the physical territory of the court, but rather contacts with the sovereignty of which the court is an arm.[28] And the sovereignty of which a federal court is an arm is, of course, the United States.

■ This is not to say that there are no restrictions upon the exercise of

---

23. Green, Federal Jurisdiction In Personam of Corporations and Due Process, 14 Vand.L.Rev. 967.

24. See Restatement (Second), Conflict of Laws (Tent.Draft No. 3, 1956), 38:
"The rendition of a judgment by a federal court when the United States has no judicial jurisdiction is a violation of the due process clause of the Fifth Amendment of the Constitution; similar action on the part of a state violates the due process clause of the Fourteenth Amendment."

25. See note 17, supra.

26. See note 19, supra.

27. See note 17, supra.

28. See International Shoe Co. v. Washington, 326 U.S. 310, esp. at pp. 319 and 320, 66 S.Ct. 154, 159, 160, where the Court, in sustaining a Washington state court's exercise of jurisdiction over a foreign corporation, attached significance to the following considerations:
"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. * * *
"[Defendant] received the benefits and protection of the laws of the state, including the right to resort to the courts for enforcement of its rights. * * * It is evident that these operations establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant [defendant] has incurred there."
See also McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."
See further Hanson v. Denckla, 357 U.S. 235, 251–255, 78 S.Ct. 1228, referring repeatedly to the defendant's contacts with "the State" or "the forum State."

personal jurisdiction by the United States within the United States. A sovereignty may by statute or rule impose restrictions upon the exercise of personal jurisdiction by its courts, and the United States has done so. As a practical matter, these restrictions are quite important, inasmuch as without them corporations might frequently be subjected to inconvenience in defending federal court suits far from their home offices and places of business.

 One such restriction is contained in Rule 4(f) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., which provides as follows:

> "*Territorial Limits of Effective Service.* All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. * * * " 29

Congress has in some instances provided for nationwide service of process,[30] but in the generality of cases service is limited by Rule 4(f) to the state in which the trial court is held. Before a federal court can exercise personal jurisdiction over a defendant, a process of the court must in some manner be served upon the defendant within the requirements of federal law. When the defendant is a foreign corporation, this generally will require, in view of Rule 4(f), that the corporation have an agent within the territorial limits of the state in which the court sits, though an exception may occur when service can be made, pursuant to Rule 4(d) (7), under a state statute providing for service outside the state, or for substituted service upon the local secretary of state or other designated official.[31]

 The venue statutes constitute another restriction upon the exercise of federal court jurisdiction, as well as a safeguard against inconvenient litigation at a distance from the "home" or place of business of the defendant. Under Title 28 U.S.C.A. § 1391(c), a corporation generally is privileged to challenge the *venue* (not *jurisdiction*) of any suit brought against it in a federal district in which the corporation is not "do-

---

29. An old statute which has been retained in the Code, Title 28 U.S.C.A. § 1693, states that

"Except as otherwise provided by Act of Congress, no person shall be arrested in one district for trial in another in any civil action in a district court."

This statute is in direct conflict with Rule 4(f), and the enabling act providing for the promulgation of the Rules, Title 28 U.S.C.A. § 2072, expressly provides that

"all laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

It therefore seems clear that Rule 4(f) has superseded Title 28 U.S.C.A. § 1693. See Mississippi Publishing Corp. v. Murphree, 326 U.S. 438, 66 S.Ct. 242.

30. E. g., Title 8 U.S.C.A. § 1451; Title 11 U.S.C.A. § 41, sub. a; Title 15 U.S.C.A. §§ 5, 10, 25; Title 28 U.S.C.A. §§ 1655, 2312; Title 38 U.S.C.A. § 784.

Rule 4(e) provides as follows:

"Whenever a statute of the United States or an order of court provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, service shall be made under the circumstances and in the manner prescribed by the statute, rule, or order."

The Notes of the Advisory Committee to this Rule make it clear that the phrase "or an order of court" refers only to situations where a statute of the United States provides for service outside the state, and does not authorize the court by order alone to make an exception to the territorial limits upon federal process set out in Rule 4(f) in the absence of such a statute.

However, extrastate service, or substituted service, may be under Rule 4(d) (7) when a state statute so authorizes. See note 31, infra.

31. Griffin v. Ensign, 234 F.2d 307; Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, 2 Cir., 243 F.2d 342; Olberding v. Illinois Cent. R. Co., 6 Cir., 201 F.2d 582, reversed on other grounds 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39.

ing business." [32] And, while the venue privilege is unavailable to a third-party defendant,[33] such a defendant may ask that the Court exercise its discretion under Rule 14 against permitting the maintenance of the third-party suit.

Finally, there is always available a motion for a change of venue under the forum non conveniens statute.[34] In fact, all else failing to protect the defendant from having to defend a suit at an inconvenient location, this statute is the defendant's last resort, because it is now clear that inconvenience and distance of litigation have no bearing upon the issue of personal jurisdiction.[35]

In the present case it is believed that the Court may exercise personal jurisdiction over Santa Fe. Santa Fe is incorporated within and does business throughout much of the United States. There are thus the requisite minimum contacts with the United States, and service has been made upon an acknowledged Santa Fe agent within the territorial limits of the Court's process. The venue privilege is not open to Santa Fe as a third-party defendant. Defending this suit in Tennessee may cause some inconvenience to Santa Fe, "but nothing like a denial of due process."[36] The motion to quash and to dismiss will therefore be overruled.

Order accordingly.

---

32. "A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

 As indicated by its language, this statute relates to venue and not to jurisdiction. Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900, 67 L.Ed. 1331. Thus cases such as Powell v. Sealectro, Inc., D. C., 205 F.Supp. 6, applying this statute's requirement of "doing business" within the district as a test of personal jurisdiction, are clearly erroneous.

33. See note 2, supra.

34. Title 28 U.S.C.A. § 1404(a).

35. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228. In the Hanson case it was argued that the jurisdiction of a Florida court should be sustained because maintenance of the suit there would cause the defendant in question no inconvenience, and because the Florida court was in fact the most convenient forum for all parties. The Court disagreed.

 "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." (p. 251, 78 S.Ct. p. 1238)

 "It is urged that because the settlor and most of the appointees and beneficiaries were domiciled in Florida the courts of that State should be able to exercise personal jurisdiction over the nonresident trustees. This is a non sequitur. * * * As we understand its [Florida's] law, the trustee is an indispensable party over whom the court must acquire jurisdiction before it is empowered to enter judgment in a proceeding affecting the validity of a trust. It does not acquire that jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law." (p. 254, 78 S.Ct. p. 1240)

 By the same reasoning, the fact that a particular forum is inconvenient for litigation does not deprive the court of jurisdiction over parties having the requisite minimum contacts with the sovereignty of which the court is an arm. Convenience and inconvenience are immaterial upon the issue of personal jurisdiction.

 See Green, Federal Jurisdiction In Personam of Corporations and Due Process, 14 Vand.L.Rev. 967, 972–4.

36. McGee v. International Life Insurance Co., 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223.