**EDWARD J. MORIARTY & CO. and Vinyloy, Inc., Plaintiffs,**

v.

**The GENERAL TIRE & RUBBER CO. and Aristovoulos G. Petzetakis, S. A., Hellenic Plastics & Rubber Industry, Defendants.**

**No. 6378.**

United States District Court
S. D. Ohio, W. D.
Dec. 8, 1967.

Taft, Stettinius & Hollister, Cincinnati, Ohio, for both plaintiffs.

Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendant General Tire & Rubber Co.

Paxton & Seasongood, Cincinnati, Ohio, for defendants Petzetakis & Hellenic.

## MEMORANDUM OF DECISION

PORTER, District Judge:

This case is before the Court on three motions, all filed by parties defendant.

The first is a motion to dismiss Count II of plaintiffs' complaint for lack of jurisdiction over the subject matter and is asserted by defendant General Tire. The second and third motions are based upon the alleged lack of jurisdiction and venue over defendant Petzetakis, S.A. One is a motion to dismiss on behalf of Petzetakis, S.A., and the other objects to certain of plaintiffs' interrogatories on the ground that this Court lacks jurisdiction over the person of Petzetakis, S. A.

Plaintiffs are Ohio firms, one a proprietorship, and one a corporation, which, in part, were engaged in purchasing plastic hose products from defendant Petzetakis, S.A., which is a Greek corporation. Plaintiffs sold the hose in various parts of the United States.

Plaintiffs' first cause of action is under the Sherman Act (15 U.S.C. § 15) and is based upon assertions of a conspiracy between Petzetakis, S.A., and General Tire in restraint of plaintiffs' trade. In support of this cause of action, plaintiffs assert that Petzetakis, S.A., appointed plaintiffs as its distributor for the hosing products mentioned above and represented that plaintiffs would continue to be its distributor even if manufacturing or sales rights for the hosing in the United States were granted to others. It is also alleged that Petzetakis, S.A., represented that plaintiffs would always be able to purchase the hosing from them directly.

Plaintiffs aver that, in reliance upon these representations, they spent much time and money in advertising and merchandising the hosing under a trade name, thereby developing a valuable reputation as distributor of said hosing.

It is alleged that, beginning in February, 1966, General Tire and Petzetakis, S.A., together with persons unknown, have engaged in a conspiracy to prevent anyone other than General Tire from importing the hosing into the United States or from purchasing the hosing from either Petzetakis, S.A., or General Tire, or from distributing such hosing in the United States, and that, pursuant to this conspiracy, Petzetakis, S.A., and General Tire have refused to deal with and have boycotted plaintiffs.

The alleged effect of this conspiracy is that plaintiffs can no longer obtain the hosing and have lost their distribution business, along with related business. This is said to be due in part to representations by General Tire that it is the sole distributor of such hosing.

The second cause of action incorporates all the allegations of the first cause of action and further alleges that General Tire had been negotiating with plaintiffs for the purchase of plaintiffs' business, and, at the request of General Tire, plaintiffs submitted for confidential inspection certain customer and inventory distributor information for the sole purpose of indicating the potential value of plaintiffs' business. It is alleged that General Tire expressly agreed to keep this information confidential, and that plaintiffs were assured that the information would not be used for a purpose other than that for which it was submitted.

Plaintiffs assert that, contrary to this agreement, General Tire used the information to establish its chain of distribution for the hosing it received from Petzetakis, S.A., and that it has solicited former distributors and customers of plaintiffs. These acts are said to establish plaintiffs' claim of unfair competition under state law. Plaintiffs seek restitution for the profits made by General Tire in sales of hosing to plaintiffs' former customers and damages based upon the above acts of General Tire.

Against this background, we will first consider the motion to dismiss by General Tire. General Tire's position rests upon the assertion that plaintiffs' second cause of action sounds in breach of contract and fraud, requiring proof of facts "obviously different than those required to sustain the allegations of * * *" the first cause of action, i. e., the second cause of action is not sufficiently related to the first so as to sustain pendent jurisdiction over it.

We cannot agree with this position. While it is true that the facts alleged in the second cause of action show a breach of an express agreement by General Tire, that cause of action, as we read it, is based on the alleged illegal attempt of General Tire to obtain confidential information from plaintiffs, the alleged success of this attempt, and the alleged use of this information to capture plaintiffs' customers for itself, all of which was allegedly undertaken in an effort to accomplish the conspiracy alleged in the first cause of action. The fact that certain words were not used in the complaint does not prevent this Court from understanding the obvious import of the language used.

The controlling case on the issue of pendent jurisdiction is United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), which clarifies a patent ambiguity in the landmark case on pendent jurisdiction, Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933).[1] This ambiguity resulted from the vagueness of the use of the term "cause of action" by the *Hurn* Court.

The Court in *Gibbs* noted that the *Hurn* opinion distinguished "grounds for recovery" from "cause of action" at a time when no one agreed what the term "cause of action" meant. This distinction between undefined terms has caused considerable confusion in cases in which the issue of pendent jurisdiction arises.

■ Under the *Gibbs* rationale, the first requirement for pendent jurisdiction is that there be a federal claim, i. e., claim which confers subject matter jurisdiction upon the federal court. Secondly, that claim must be a "substantial" one. We interpret the term "substantial" to refer to a cause of action which would withstand a motion to dismiss for failure to state a claim.

Once there is a substantial federal claim, the appended claim, nonfederal in nature, must be related to the federal claim in sufficient degree to confer pendent jurisdiction over it. It is on this degree of relation that the parties in this case differ. (General Tire has not challenged the sufficiency of plaintiffs' first cause of action.)

■■ In order to understand the degree of relation necessary between claims or grounds for recovery before pendent jurisdiction is taken, the purpose of the doctrine must be understood. Under the Federal Rules of Civil Procedure, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties. United Mine Workers of America v. Gibbs, supra. Joinder of claims, parties and remedies is strongly encouraged. Yet the federal court is limited to the extent that jurisdictional requirements must be met. However, it has always been the essential rule that once jurisdiction is laid in the federal court, that court must have the power to hear and dispose of the entire case. United Mine Workers of America v. Gibbs, supra.

■ Thus the basis of doctrine of pendent jurisdiction rests upon the absolute uselessness of piecemeal litigation, and its degrading effect upon the federal courts. Theories of judicial economy play no great part in this aspect of the discussion, and the fallacious consideration of these theories in relation to the reason for the doctrine can only result in a grave understatement of the purpose of pendent jurisdiction, and perhaps even a complete misunderstanding of the rule.

In our opinion, the doctrine goes to the heart of the power of the federal system. Were a federal court resigned to hearing only questions which satisfied the jurisdictional requirements, it would be possible, and more likely probable, that the federal courts would be relegated to an advisory position in respect to state courts. In more cases than not the federal courts would be un-

---

1. The original exposition on pendent jurisdiction was made in Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204 (1824).

able to render a decision, because the full case would not be presented.

As an example, in a case based upon restraint of trade under the Sherman Act, and involving a breach of an exclusive dealing contract, if the federal court finds the contract valid under the Sherman Act, it is powerless to decide the question of breach, which is based upon state law, absent the doctrine of pendent jurisdiction. The case then goes into state court for final resolution.

■ Certainly it is essential that a court, if it is indeed to represent itself as a court of law, have the power to hear and decide the entire action which comprises but one "constitutional case." United Mine Workers of America v. Gibbs, supra. For this reason, the doctrine of pendent jurisdiction was established.

■ Once the grounds for pendent jurisdiction are met, the theories of judicial economy become meaningful. For, even though a federal court has the power to hear the entire case, it may nevertheless dismiss the action if, for example, the federal claim is dismissed before trial, even though not insubstantial in a jurisdictional sense, or if there is a likelihood of jury confusion resulting from multiple and complex legal issues. United Mine Workers of America v. Gibbs, supra.

■ In our opinion an understanding of the purpose of the doctrine sufficiently answers the question as to what degree of relation is necessary to sustain pendent jurisdiction. However, it may be helpful to add the rule set out in *Gibbs*. It is *not* necessary that the two grounds for recovery be "little more than the equivalent of different epithets to characterize the same group of circumstances," as was stated in *Hurn*, supra.

■ The requirement is that "the state and federal claims derive from a common nucleus of operative fact." United Mine Workers of America v. Gibbs, supra. The commonsense state-

ment of this mystic rule is no more than this: If considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in this court to hear the whole. United Mine Workers of America v. Gibbs, supra.

■ In this case it is clear that the above criteria have been met by plaintiff. The Court is of the impression that the facts alleged in the second cause of action may go directly to show an overt act undertaken to accomplish the purpose of the conspiracy alleged in the first cause of action. Although the legal grounds for recovery on each cause of action differ to a certain extent, much the same proof will be offered on both causes of action, and the Court considers the continuing fact pattern underlying both causes of action to make up but one constitutional case.

■ As to the Court's discretionary power to dismiss the second cause of action, we are not disposed to exercise this power lightly, and we refuse to do so on the basis of speculation. At this point in the case, the Court can see the possibility of confusion raising its head only at the time of the Court's charge, although it may be well to consider the possible difficulty of the jury comprehending complex limiting instructions at the time certain evidence is introduced. But we feel this is a problem which must be dealt with no earlier than after all preliminary motions testing the sufficiency of plaintiffs' claims have been heard and the case is pared down to the core of the matter and is ready for trial. The motion by General Tire will, therefore, be denied.

Next we pass to the two motions on behalf of Petzetakis, S.A., and the Court will consider these as one, since the basis therefor is the same.

■ The first question is whether venue is properly laid in this District as to Petzetakis, S.A. Venue under the

Sherman Act is not limited to those criteria set out in 15 U.S.C. § 22, "District in which to sue corporation," but includes the criteria set out in the general venue statute, 28 U.S.C. § 1391. Pure Oil Co. v. Suarez, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966); Seilon, Inc. v. Brema, S.p.A., 271 F.Supp. 516 (N.D.Ohio, 1967).

As to Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), which held § 1391 inapplicable to venue in patent cases due to the special patent venue statute, the *Pure Oil* decision seems to have limited that holding strictly to the special patent venue statute, and indicates that the general provisions of § 1391 supplement all other special venue statutes. See 1 Barron & Holtzoff, Federal Practice and Procedure, § 80, 1966, Supp., p. 232.

It need only be noted that the special venue statute in question, 15 U.S.C. § 22, gives no indication that it is to be applied exclusively. Looking to the general venue statute, then, part (d) of § 1391 states simply: "An alien may be sued in any district."

The district courts have applied this provision to alien corporations, whether as sole defendants, or as one of multiple defendants. Japan Gas Lighter Ass'n v. Ronson Corp., 257 F.Supp. 219 (D.N.J., 1966). It has been held that § 1391(d) must be applied as it reads, and, assuming personal jurisdiction, venue is not defeated where valid out-of-district service can be effected upon an alien. Any other construction would, with respect to aliens, sterilize the force of recent state long-arm statutes, as well as the recent amendments to Rule 4 of the Federal Rules of Civil Procedure. It would grant favored status to an alien nondomiciliary, and it might well preclude a suit against an alien who resided outside the United States, even though a cause of action existed against him based upon substantial contacts with a state. Oil & Gas Ventures—First 1959 Fund Ltd. v. Kung, 250 F.Supp. 744 (S.D.N.Y.,

1966). Also see Zacharias v. Ippen, 337 F.2d 445 (10 Cir., 1964); State of Maryland for Use of Mitchell v. Capital Airlines, 199 F.Supp. 335 (S.D.N.Y., 1961); 1 Moore's Federal Practice, § 0.142(6), pp. 1508–1513 (2d Ed., 1960).

Next we pass to the more difficult issue: the question of this Court's jurisdiction over the person of Petzetakis, S. A. This issue raises some novel and intriguing questions, and a detailed factual background is therefore necessary.

Service upon Petzetakis, S.A., was made pursuant to Rule 4(d) (7) and (e), F.R.Civ.P., which provides that summons may be served upon a foreign corporation in the manner prescribed by the law of the state in which the district court sits. In this case service was made under §§ 2307.381–2307.385, Ohio Rev.Code. Two sections of the Ohio Rev.Code are pertinent to this motion, and must be set out in part at this point:

Section 2307.382, in part, provides:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

"(2) Contracting to supply services or goods in this state;

"(3) Causing tortious injury by an act or omission in this state;

\*     \*     \*     \*     \*     \*

"(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

Section 2307.383, in part, provides:

"When personal jurisdiction is authorized by section 2307.382 of the Revised Code service or process may be made on such person \* \* \* or on the secretary of state who, for this purpose, shall be deemed to be the statutory agent of such person."

The following facts are admitted by defendant Petzetakis, S.A., either by af-

fidavit or answers to plaintiffs' interrogatories:

Mr. Aristovoulos G. Petzetakis is the managing director of the corporation, whose principal place of business is in Piraeus, Greece. The corporation has never had an office, place of business, or other facility or phone listing in Ohio. Nor has it ever had a stock of goods, bank accounts, salesmen or other employees or representatives or agents in Ohio. The corporation has no resident agent in Ohio, no licenses have been issued by the State of Ohio to the corporation, and it pays no fees or taxes to Ohio.

During the years 1962 through 1965, the plaintiffs were the only account of Petzetakis, S.A., located in Ohio to which the corporation invoiced any products. During these years the sales of hose were invoiced to plaintiffs as follows:

1962 – $2,657.30
1963 – $6,562.47
1964 – $53,816.71
1965 – $4,511.23

No sales have been made to plaintiffs since 1965, and a large percentage of the hosing sold above was not shipped to Ohio, but to other states. From January 1, 1965, to April 20, 1967, Petzetakis, S.A., has invoiced the same kind of hose to General Tire, but none of the hose has been shipped into Ohio. All orders for the hose came from General Tire's Industrial Products Division at either Wabash or Evansville, Indiana. The corporation, however, has not disclosed the amount of sales to General Tire over this period of time.

Petzetakis, S.A., also made purchases from "a person" (whose identity is regretably not disclosed) located in the Northern District of Ohio, of synthetic rubber, as follows:

1962 – $11,209.53
1963 – $10,301.00
1964 – $20,313.80
1965 – $16,539.92
1966 – $30,125.71

In 1964, the corporation purchased from the same "person" $13,376.19 worth of resin. All the foregoing purchases were ordered by mail from Greece and shipped directly to Petzetakis, S.A., in Greece.

Petzetakis, S.A., did not own any tangible assets in Ohio during the period January 1, 1962 through April 20, 1967, but during this period plaintiffs have owed Petzetakis, S.A., money, and still do. Also during this period, General Tire has owed Petzetakis, S.A., money, but all payments have been made from Indiana.

There were various times when "personnel" from Petzetakis, S.A., met with personnel of General Tire in Ohio and elsewhere in order to complete negotiations for the contracts which led eventually to this suit. The details of these meetings are taken from the affidavit of Theodore Gladstone, Petzetakis, S.A.,'s attorney in New York, and its representative in the negotiations, from Petzetakis, S.A.,'s answer to plaintiffs' interrogatories, and from General Tire's answers to plaintiffs' interrogatories, none of which statements are contradicted.

General Tire's home office and principal place of business is located in Akron, Ohio, and the principal officers of the company may be found there, except three officers who may be found in California, Indiana, and Michigan, respectively. The hosing produced by General Tire is made by its Industrial Products Division in Indiana. The president of this division is Mr. Vinnedge, and the vice-president is Mr. Garver.

In February, 1964, Mr. Petzetakis met with personnel of the Firestone Company in Akron, Ohio, for the purpose of discussing a sales agreement for the manufacture of hose in the United States. There was a second meeting also in February of 1964 between the same parties and for the same purpose, with Mr. Gladstone also in attendance. At about the same time in 1964 Mr. Petzetakis met with Mr. Campbell at Firestone in Akron for the same pur-

pose, and with Mr. Moriarity in Akron for the same purpose.

On July 8 and 9, 1964, Mr. Gladstone, as attorney for Petzetakis, S.A., met with representatives of Firestone in Akron for purposes of discussing a sales agreement. In May of 1965 there was a meeting in Athens, Greece, attended by Earnheart, chief patent counsel for General Tire, Mr. Vinnedge of General Tire, and Mr. Petzetakis. The purpose of the meeting was to discuss a sales agreement or the formation of a joint venture for the manufacture of hosing supplied by Petzetakis, S.A., in the United States.

In June, 1965, there was a full schedule of meetings in the United States, and more particularly in Ohio, which Mr. Petzetakis attended, representing Petzetakis, S.A. He met with personnel of the Goodrich Company in Akron, with personnel of Standard Products Company in Cleveland, with a Mr. Mullen (firm not given) in Akron, with representatives of Goodyear in Akron, with a representative of the Ohio Rubber Company in Willoughby, Ohio, and with a Mr. Green (firm not given) in Port Clinton, Ohio, and with Mr. Moriarity in Akron.

Also in June, 1965, there was a meeting in Akron attended by Mr. O'Neil, president of General Tire, Mr. Earnheart of General Tire, Mr. Vinnedge and Mr. Garver of General Tire, and Mr. Petzetakis for Petzetakis, S. A. Another meeting that month took place in Wabash and Evansville, Indiana, between Messrs. Earnheart, Vinnedge and Garver and the technical director of General Tire's Industrial Products Division and Mr. Petzetakis of Petzetakis, S.A. And there was also a meeting between Mr. Vinnedge and Mr. Petetakis and Mr. Moriarity in Akron that month. At this meeting Mr. Petzetakis mentioned plaintiff Moriarity by name when he introduced Mr. Moriarity as a "local merchandiser of his product."

According to Petzetakis, S.A., all of these meetings were for the purpose of discussing a sales agreement for the manufacture of Petzetakis, S.A.,'s hosing in the United States, although an exclusive licensing agreement between Mr. Petzetakis and General Tire was also discussed at some of the meetings.

In September, 1965, there was a meeting in Athens, Greece, between Messrs. Garver, Earnheart, Gladstone and Petzetakis, and in January, 1966, there was a meeting in New York between Messrs. Gladstone, Garver, Earnheart and Petzetakis, the result of which was an exclusive licensing agreement between Mr. Petzetakis and General Tire. Another product of these negotiations was an agreement for the manufacture and sale of Petzetakis, S.A.,'s hosing by General Tire in the United States. These two agreements, and acts done pursuant to these agreements form the factual basis behind plaintiffs' suit.

In Petzetakis, S.A.,'s answers to plaintiffs' interrogatories, Mr. Petzetakis is referred to as "representing the corporation," and in every transaction described above which concerned the corporation, no one other than Mr. Petzetakis is referred to as representing the corporation. Thus, it is a fair inference that Mr. Petzetakis represented Petzetakis, S.A., in all meetings which dealt with the sales agreement.

■ It is this Court's opinion that, at first blush, it should be irrelevant whether or not Petzetakis, S.A.'s activities in Ohio meet the tests set out in § 2307.382, Ohio Rev.Code. It is our opinion that a federal district court may acquire jurisdiction over the person of a defendant incorporated under the laws of a foreign country without regard to contacts of the corporation with the state where the court sits. This is especially true in a case where the cause of action rests upon a federally-created right, such as this one, and where national uniformity in enforcing that right should be the true guideline.

■ A court is a part of the judicial branch of the government of some state or nation. That government may have undertaken to give the court power to

entertain a certain action or actions, but, in order for the court to have jurisdiction, the state or nation must have judicial jurisdiction over the parties.

▮ Thus, in our view, the judicial jurisdiction over the person of the defendant does not relate to the geographical power of the particular court which is hearing the controversy, but to the power of the unit of government of which that court is a part. The limitations of the concept of personal jurisdiction are a consequence of territorial limitations on the power of the respective forums. Thus, as applied to the states, the constitutional test for personal jurisdiction involves a determination as to whether the defendant has certain minimal contacts *with the forum state*, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

▮ By the same token, we feel that the appropriate inquiry to be made in a federal court where the suit is based upon a federally created right is whether the defendant has certain minimal contacts with the United States, so as to satisfy due process requirements under the Fifth Amendment. For a thorough discussion of this theory, see Green, "Federal Jurisdiction in Personam of Corporations and Due Process," 14 Vanderbilt L.Rev. 967 (1961); Note, "Jurisdiction of Federal District Courts over Foreign Corporations," 69 Harv.L.Rev. 508 (1956). Also see, Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2 Cir., 1960); Gkiafis v. Steamship Yiosonas, 342 F.2d 546 (4 Cir., 1965); Mutual International Export Co. v. Napco Industries, Inc., 114 U.S.App.D.C. 392, 316 F.2d 393 (1963); Lone Star Package Car Co. v. Baltimore & O. R. Co.,

212 F.2d 147 (5 Cir., 1954); Goldberg v. Mutual Readers League, Inc., 195 F. Supp. 778 (E.D.Pa., 1961); Bar's Leaks Western v. Pollock, 148 F.Supp. 710 (N. D.Cal., 1957); Singleton v. Atlantic Coast Line R. R. Co., 20 F.R.D. 15 (E. D.Mich., 1956).

Unfortunately, this course has not been left open to us by the federal rules or statutes. That is, neither Congress nor the Supreme Court has provided statute or rule whereby substituted service may be made upon an alien corporation having certain minimal contacts with the United States.[2] And when substituted service is made pursuant to a state long-arm statute, as it was in this case, then the rules provide that service be made *"under the circumstances* and in the manner prescribed in the statute * * *."* Rule 4(e) (2), F.R.Civ.P. (emphasis added).

▮ We take the italicized portion to mean that when service is made pursuant to a state long-arm statute, it is only proper when the corporation served meets the qualifications for service set out in that statute. See § 2307.-382, Ohio Rev.Code. Under Ohio law, service can be made under the long-arm statute only "when personal jurisdiction is authorized by section 2307.382 of the Revised Code * * *." Thus, we must complete the circle, and now look to the appropriate parts of § 2307.382.

▮ While there are not many cases reported construing the Ohio statute, it is clear that the activities of Petzetakis, S.A., are sufficient to sustain a finding that it was "transacting business" as that term is used in § 2307.382, under the holding of American Compressed Steel Corp. v. Pettibone Mulliken Corp., 271 F.Supp. 864 (S.D. Ohio, 1967). In that case, representatives came into the state in order to en-

---

**2.** It should be noted that, in those cases set out on this page and other cases researched by the Court, whenever the "federal" test of jurisdiction is applied, the Court invariably winds up looking at the contacts of the foreign corporation *with the state*, rather than with the United States. While we believe this to be a misconception of the "federal" test as we have applied it, the lack of means to pursue the proper course leaves room for no other result.

ter negotiations with the plaintiff for the purchase and sale of a machine. Defendant also had a "manufacturers representative" who was likened to an independent contractor, located in Cleveland, who took part in the negotiations. The activity of Mr. Petzetakis on behalf of Petzetakis, S.A., in Ohio in this case goes far beyond the activities of the defendants in Ohio in American Compressed Steel. Also see Berlemann v. Superior Distributing Co., 17 Ill.App.2d 522, 151 N.E.2d 116 (1958); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

Under part (B) of § 2307.382, only a cause of action arising from acts enumerated in that section may be asserted against the defendant. It seems clear that the causes of action stated against Petzetakis, S.A., arose from the activities it undertook in Ohio, first by selling hosing to plaintiffs under the alleged contract with plaintiffs, then by the alleged breach of that contract and further dealing with General Tire, which is an Ohio-based corporation. In this connection, the Commissioners' Note to § 1.03 of the Uniform Interstate and International Procedure Act, from which § 2307.382 was taken, states that a claim arising from "transacting business" may sound in contract, tort, or quasi-contract. Uniform Laws Annotated, Vol. 9B, p. 310 (1956). Of course, an isolated act within the forum, which act itself gives rise to the cause of action, is sufficient contact with the state to satisfy the Fourteenth Amendment due process standards. McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Under the allegations of the complaint, acts undertaken in Ohio to complete the agreement between Petzetakis, S.A., and General Tire, and to carry them out, supply the necessary contact with this state under *McGee.*

Having decided the question of jurisdiction, it becomes unnecessary to determine whether Petzetakis, S.A., meets the other tests set out in § 2307.382, although it is quite possible that its activities also fall within part (2) and part (3) of that statute.

To conclude, one further observation may be made. This is a case where the Greek corporation has engaged in a continuous course of dealing with one Ohio firm from 1962 through 1965, from which it derived a total revenue of over $67,000. Even though this amount of money may be inconsequential as compared with Petzetakis, S.A.'s total earnings in any given year, still it is substantial from the standpoint of contact with this state. It has also dealt with an Ohio-based corporation, General Tire, from 1966 to the present time, selling it an undisclosed amount of hosing, which is shipped to states other than Ohio. At the time when Petzetakis, S.A., allegedly had an agreement to continue to permit plaintiffs to be its distributor for the hosing in the United States, Mr. Petzetakis on behalf of his company, met with various Ohio firms *in Ohio* no fewer than eleven times in order to discuss a licensing agreement (which is not in dispute here) and a sales agreement, which eventually was consummated with General Tire, and which has become the basis of this suit.

Clearly Petzetakis, S.A., has derived substantial revenue from this state, and has engaged in acts in this state which gave rise to a cause of action for restraint of trade, and Petzetakis, S.A., continues to deal with an Ohio-based corporation in acts which are allegedly in restraint of trade toward plaintiffs. Therefore, the motion of Petzetakis, S. A., to dismiss for lack of jurisdiction and venue is denied, and the motion objecting to certain interrogatories is also denied.

As to the latter motion, it has herein been determined from the affidavits and answers to interrogatories submitted by all parties that Mr. Petzetakis acted as representative of Petzetakis, S.A., in negotiations which led to the contract in dispute. For this reason, it is relevant to inquire into Mr. Petzetakis' activities on behalf of the corporation, as the dis-

closures made to these inquiries may shed some light on the question of conspiracy as well as on the substantive causes of action.

Entry accordingly.