**CRYOMEDICS, INC.**

v.

**SPEMBLY, LIMITED, et al.**

Civ. No. B–74–453.

United States District Court,
D. Connecticut.

June 11, 1975.

Barry Kramer, Stamford, Conn., Robert S. Cooper, Bridgeport, Conn., for plaintiff.

Roger B. McCormick, Hartford, Conn., for defendants.

*RULING ON DEFENDANTS' MOTION TO DISMISS*

NEWMAN, District Judge.

This motion to dismiss presents in an unusual procedural posture an important question of the reach of this Court's *in personam* jurisdiction. Plaintiff Cryomedics, Inc. ("Cyromedics") is a Connecticut corporation engaged in the manufacture and sale of cryosurgical instruments that are sold to hospitals and surgeons. Defendants Spembly, Limited

and Spembly Technical Products, Limited (referred to jointly as "Spembly") are incorporated under the laws of Great Britain and have their principal place of business in England. Spembly is also engaged in the manufacture and sale of cryosurgical instruments. This action arises under the patent laws of the United States, 35 U.S.C. §§ 271, 281. In the first three counts of its complaint, Cryomedics charges that Spembly has infringed, actively induced the infringement, and contributed to the infringement of its United States patent 3,696,813 ("the '813 patent"), in violation of 35 U.S.C. § 271. Count IV seeks a declaration that Spembly's United States patent 3,502,081 ("the '081 patent") in invalid and not infringed by Cryomedics.[1] 28 U.S.C. § 2201. Spembly has moved to dismiss all four counts on the ground that it is not subject to the *in personam* jurisdiction of this Court, Fed.R.Civ.P. 12(b)(2). Spembly has also moved to dismiss Count IV on the ground that there is no justiciable controversy between it and Cryomedics with respect to the '081 patent, and that this Court therefore lacks jurisdiction over the subject matter, Fed.R.Civ.P. 12(b)(1).

With respect to *in personam* jurisdiction, Spembly does not now contest Cryomedics' claim that the Connecticut corporate long-arm statute, Conn.Gen. Stat. § 33–411(c), provides a basis for service of process on it. See Fed.R.Civ. P. 4(e), 4(i)(1)(D).[2] Section 33–411(c) has been construed "to extend Connecticut's jurisdictional reach to the constitutional limits," *Electric Regulator Corp.* v. *Sterling Extruder Corp.*, 280 F. Supp. 550, 556 (D.Conn.1968), and Spembly's sole remaining challenge to this Court's exercise of personal jurisdiction over it is the claim that the application of the statute to it is unconstitutional.

The argument as advanced by Spembly is based on two propositions: first, that *International Shoe Co.* v. *Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), requires that as a predicate to this Court's jurisdiction Spembly have certain "minimum contacts" with the State of Connecticut,[3] and second, that its contacts with the State are insufficient to satisfy *International Shoe's* due process standards.[4] To establish the second proposition Spembly relies almost exclusively on the District Court decision in *Honeywell, Inc.* v. *Metz Apparatewerke,* 353 F.Supp. 492 (N.D.Ill.1972). *Honeywell* has been reversed, however, 509 F.2d 1137 (7th Cir. 1975), and although it still provides a useful basis for comparison, it is no longer controlling.

---

1. Three other actions involving the '813 patent are pending. An infringement suit by Cryomedics against Keller, Inc., a Spembly distributor, is proceeding in the Eastern District of Pennsylvania, and two other Spembly distributors, Elmed and Storz, have brought separate actions in this District seeking declaratory judgments that the '813 patent is void and not infringed.

2. Spembly had claimed initially that no statute or rule purported to authorize service on it. That claim was withdrawn at oral argument.

3. *International Shoe* applied the due process clause of the Fourteenth Amendment in determining the limits of state court *in personam* jurisdiction over non-residents. Because subject-matter jurisdiction in the present action is conferred by federal law, the sufficiency of Spembly's contacts, whether with the State of Connecticut or with the United States, must be tested against the Fifth Amendment. Although the Fifth Amendment test is sometimes expressed in more general "fairness" terms, *International Shoe* and subsequent cases provide the basis for the fairness test, and the analysis is substantially similar. *E. g., Honeywell, Inc.* v. *Metz Apparatewerke,* 509 F.2d 1137, 1143 (7th Cir. 1975); *SCM Corp.* v. *Brother International Corp.,* 316 F.Supp. 1328 (S.D.N. Y.1970). *Compare Oxford First Corp.* v. *PNC Liquidating Corp.,* 372 F.Supp. 191 (E.D.Pa.1974) (defendant was an American corporation).

4. Spembly concedes that venue is properly in this District, 28 U.S.C. § 1391(d). *See Brunette Mach. Wks.* v. *Kockum Industries,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972); *Seilon, Inc.* v. *Brema S.p.A.,* 271 F.Supp. 516 (N.D.Ohio 1967).

Cryomedics resists the claim of insufficient contacts on two fronts. It contends, first, that it has alleged sufficient contacts with Connecticut to meet the constitutional requirements, see note 3, *supra,* and, second, that Spembly's status as an alien permits this Court to consider the aggregate of Spembly's contacts with the United States as a whole. See *Honeywell* v. *Metz, supra,* 509 F.2d at 1143 n. 2.

Taking as true the allegations of the complaint as supplemented by affidavit and particularized in Cryomedics' memorandum, Spembly has the following contacts with Connecticut.[5] Storz Instrument Co., described as a "sub or dealer under" Keeler, Inc., one of Spembly's two primary distributors in the United States, has at least one salesman who solicits in Connecticut. Storz has offered infringing and other Spembly equipment for sale in Connecticut. Keeler itself has made at least one sale in Connecticut of Spembly equipment, although the complaint does not allege the sale was of equipment that infringes the '813 patent. Elmed, Inc., Spembly's other primary American distributor, also has representatives who solicit and who have sold at least one item of infringing Spembly equipment in Connecticut. Cryomedics also alleges that Spembly has caused Elmed and Keeler to sue Cryomedics in Connecticut, that a director of Spembly met once in Connecticut with Cryomedics' president, and that Spembly has a Connecticut licensee that apparently is independent of Spembly and does not manufacture or deal in Spembly equipment. Spembly, of course, describes these contacts in more limited terms and disputes the significance of those that it admits. Other than the charges of voluntary involvement in litigation in Connecticut, and

the related allegation that Spembly has agreed to indemnify its distributors for losses incurred in defending and prosecuting the patent actions, Cryomedics has offered no evidence of the relationship between Spembly and its distributors.

In *Honeywell* v. *Metz, supra,* the Court observed that there is no easy formula for determining whether contacts are sufficient to comply with due process, and that a court must determine on a case-by-case basis whether a non-resident defendant "can be said to have invoked, by act or conduct, the benefits and protection of the laws of the forum." 509 F.2d at 1144. See *International Shoe* v. *Washington, supra; Hanson* v. *Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Metz was found to have availed itself of the protection of Illinois law by injecting its products into the stream of commerce "under such circumstances that it should reasonably have anticipated that injury through infringement" would occur in Illinois, 509 F.2d at 1144. Metz's involvement with Illinois, for purposes of this test, was substantially greater than Spembly's involvement with Connecticut; one of Metz's principal American distributors was incorporated in Illinois and assigned a limited territory in which it was Metz's exclusive distributor, and at least one Chicago firm purchased continuously from that distributor and regularly sold infringing equipment at retail. *Id.* at 1139. The Court of Appeals also found that the distribution of its products in Illinois generated revenue for Metz, and, relying on the "economic realities" of Metz's relations with its distributors, found sufficient contacts to sustain jurisdiction over Metz.

The relative sparseness of the allegations about Spembly's relationship with

5. The complaint contains more substantial allegations of Spembly's contacts with the United States as a whole. It alleges, for example, that Spembly provides technical assistance to its distributors and the ultimate users of its products in the United States, but makes no allegation that such activity has occurred in Connecticut. ¶¶ 20, 21. Similarly, Spembly is alleged to have solicited orders from and for its distributors in the United States, ¶¶ 22, 23, and to have sent employees to the United States to aid its distributors, ¶ 24.

its American distributors,[6] and about their relationship with Connecticut, is a matter of some consequence if jurisdiction over Spembly is to be tested by its contacts with Connecticut; this Circuit requires, in a suit to recover for injury caused within a state by conduct occurring without the state, more of a showing of foreseeability for jurisdictional purposes than the "rather low floor of foreseeability necessary to support a finding of tort liability." *Leasco Data Processing Corp.* v. *Maxwell,* 468 F.2d 1326, 1341 (2d Cir. 1972).

> The person sought to be charged must know, or have good reason to know, that his conduct will have effects in the state seeking to assert jurisdiction over him. *Ibid.*

Absent such a showing of foreseeability, contact with Connecticut is merely fortuitous and not an intentional invocation of the state's protection, and is an insufficient basis for jurisdiction. Compare *id.* at 1341–42 n. 11. This more stringent standard may well have been met in *Honeywell,* although the Court of Appeals apparently applied the less rigorous standard. Metz's relationship with its distributor was a close one, and Metz appears to have known that it was incorporated in Illinois and that a Chicago dealer was retailing its products.

▮ In the present case, it is a close question whether Spembly had "good reason" to know its products would be sold in Connecticut, or whether it was more like the alien defendant in *Marston* v. *Grant,* 351 F.Supp. 1122 (E. D.Va.1972), which sold to distributors knowing its products would be marketed abroad, including the United States, but with no particular reason to know where in the United States such sales would be

solicited and consummated. Compare *Rheem Mfg. Co.* v. *Johnson Heater Corp.,* 370 F.Supp. 806 (D.Minn.1974), with *SCM Corp.* v. *Brother International Corp.,* 316 F.Supp. 1328 (S.D.N.Y.1970). Probably the better course would be to deny the motion, especially in light of Spembly's alleged voluntary involvement in litigation in this District, and allow Cryomedics to attempt to prove the jurisdictional facts, including the nature of Spembly's activities in the litigation, either at trial or through more pre-trial discovery. Cf. *Leasco Data Processing Corp.* v. *Maxwell, supra,* 468 F.2d at 1342–44. With respect to the first three counts of the complaint, however, it is not necessary to decide whether Spembly's contracts with Connecticut are alone sufficient to satisfy the demands of the Constitution. When a federal court is asked to exercise personal jurisdiction over an alien defendant sued on a claim arising out of federal law, jurisdiction may appropriately be determined on the basis of the alien's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone. See von Mehren and Trautmen, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1123–25 n. 6 (1966). If the defendant's contacts with the United States are sufficient to satisfy the fairness standard of the Fifth Amendment, see note 3, *supra,* then the only limitation on place of trial would be the doctrine of *forum non conveniens.* Cf. *Holt* v. *Klosters Rederi A/S,* 355 F.Supp. 354 (W.D.Mich.1973).

The few courts that have explicitly considered the appropriate unit of government with which there must be con-

---

6. The complaint alleges in several places that Spembly sold its products in the United States through "agents." Spembly, in an affidavit of its director, Hilton Thomas, denies that it had any "agents, salesmen, employees, officers or any other authorized persons transacting business" in Connecticut. ¶ 3. Cryomedics' memorandum, in the section setting forth the facts it contends are

relevant to the disposition of this motion, makes no mention of any agents of Spembly in the United States. The bare allegation contained in the complaint is insufficient to establish such a relationship, even for the purposes of this motion. Cf. *Leasco Data Processing Corp.* v. *Maxwell,* 468 F.2d 1326, 1342 (2d Cir. 1972).

tacts have all agreed that aggregation of an alien defendant's contacts with the United States is the proper procedure in a case arising under federal law.[7] The seminal case is *Edw. J. Moriarty & Co.* v. *Gen. Tire & Rubber Co.*, 289 F.Supp. 381 (S.D.Ohio 1967). Although the defendant's challenge to the application of the Ohio long-arm statute required the Court to consider the defendant's ties to the state in which it sat, it argued convincingly that it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part. 289 F.Supp. at 390. *Moriarty* was a Sherman Act case, and the Court commented that measuring national contacts was particularly appropriate "where national uniformity in enforcing that right should be the true guideline." *Id.* at 389. *Moriarty* was followed in *Holt* v. *Klosters Rederi A/S, supra,* a suit brought under the "Death at Sea Act," 46 U.S.C. § 761 *et seq.*, and jurisdiction there was upheld on the basis of contacts exclusively with parts of the United States outside the forum state. The *Holt* court did not discuss service of process.

In *Engineered Sports Products* v. *Brunswick Corp.*, 362 F.Supp. 722 (D. Utah 1973), a patent infringement action, the Court introduced a concern not made explicit in earlier cases, and not central to the present action, as the other pending suits involving these parties make apparent. The alien defendant had objected that its contacts with Utah were minimal, and the Court responded by highlighting the possibility that the test proposed by the defendant might prevent suit in any district in the United States.

Due process or traditional notions of fair play and substantial justice should not immunize an alien defendant from suit in the United States simply because each state makes up only a fraction of the substantial nationwide market for the offending product. 362 F.Supp. at 728.

It is difficult to see how *International Shoe* and its progeny, which dealt with the limits on the jurisdiction of state courts, and on which Spembly bases its argument, could be read to limit the jurisdiction of a federal court on a federally-created cause of action, see *First Flight Co.* v. *National Carloading Corp.*, 209 F.Supp. 730 (E.D.Tenn.1962); Note, Jurisdiction of Federal Courts Over Foreign Corporations, 69 Harv.L. Rev. 508, 515 n. 59 (1956), especially in light of the accepted principle that Congress has the power "to provide that the process of every district court shall run into every part of the United States." *Robertson* v. *Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 622, 69 L.Ed. 1119 (1925) (Brandeis, J.). See *Coleman* v. *American Export Isbrandtsen Lines, Inc.*, 405 F.2d 250, 252 (2d Cir. 1968); H. Peterfreund, Federal Jurisdiction and Practice, 32 N.Y.U.L.Rev. 491, 499 (1957). Courts that have talked as if *International Shoe* applied directly have usually found sufficient contacts and not addressed the question explicitly, *e. g.*, *SCM Corp.* v. *Brother International Corp., supra; Japan Gas Lighter Assn.* v. *Ronson*, 257 F.Supp. 219 (D.N.J. 1966).[8]

Analysis of the principal interest protected by *International Shoe* also suggests that wholesale importation of its strictures into federal question litigation in federal court is improper, at least when an alien defendant is involved.

---

7. This approach seems implicit in the Second Circuit's opinion in *Leasco Data Processing Equipment Corp.* v. *Maxwell, supra. See also, Alco Standard Corp.* v. *Benalal*, 345 F. Supp. 14, 24 *et seq.* (E.D.Pa.1972).

8. The confusion seems traceable to *Lone Star Package Car Co., Inc.* v. *Baltimore &*

*O. R.*, 212 F.2d 147 (5th Cir. 1954), cited in *Japan Gas Lighter Assn.* v. *Ronson. Lone Star*, which arose under the so-called Carmack Amendment, 49 U.S.C. § 20(11), did not involve the assertion of jurisdiction over an alien defendant. See text following this note.

When a defendant is a citizen of the United States, there are very real differences in convenience between litigating in a state where it does business or resides, and in one where it has only insignificant contacts; this concern is an important consideration underlying the Fourteenth Amendment's restrictions on the reach of state court jurisdiction. The considerations are entirely different, however, when an alien is involved, especially one like Spembly, which transacts business in the United States only through other companies, and which maintains a place of business only in the country of its incorporation. Spembly has no reason based on fairness to prefer any one particular district to any other, compare *Oxford First Corp.* v. *PNC Liquidating Corp.*, 372 F.Supp. 191 (E.D.Pa.1974). Although Spembly is involved now in multiple litigation in the United States, some of it apparently of its own initiation, the proper remedy for that problem is a motion to stay one or more proceedings; Spembly has declined to make such a motion.

In light of these principles, Spembly's motion to dismiss the first three counts because of the claimed insufficiency of its contacts with Connecticut must be denied. Cryomedics has alleged substantial contacts with the United States, and at oral argument Spembly conceded that it could not successfully resist personal jurisdiction in the action pending against it in the Eastern District of Pennsylvania.

▉ With respect to Count IV of the complaint, the constitutional issue is the same, Spembly's argument to the contrary notwithstanding. The same activities that required the Court to find contacts with the United States sufficient to support personal jurisdiction on the infringement counts also suffice to supply that jurisdiction on the count seeking a declaration that Spembly's '081 patent is void and not infringed. *Gerber Scientific Instrument Co.* v. *Barr and Stroud Ltd.*, 383 F.Supp 1238 (D. Conn.1973), does not require a different result. It holds only that when an alien patentholder's only alleged contact, either with the forum or with the United States as a whole, is the "bare unasserted statutory power" to sue, its patent can be the subject of litigation only in the District of Columbia. 35 U.S.C. § 293. Spembly has sufficient contacts with the United States so that it does not fall within § 293's coverage.

The dispute concerning this Court's jurisdiction over the subject matter of Count IV is essentially a battle of conflicting affidavits, and Spembly's is not sufficient to prevail. Cryomedics has submitted the affidavit of its president alleging in detail the content of a series of communications from Spembly to Cryomedics, and claims that these communications amount to threats that Spembly would bring an infringement action against Cryomedics in the United States to protect Spembly's '081 patent.[9] Spembly's response is the conclusory denial in the affidavit of its director, Hilton Thomas, that it ever threatened, or authorized anyone to threaten, an infringement action against Cryomedics; the affidavit does not deny that the communications detailed in the Cryomedics' affidavit took place. While perhaps not clearly threatening, the communications alleged might very well have been intended and perceived as threats. In the context of the parties' frequently hostile commercial relationship, Cryomedics has made a sufficient showing of a real controversy, see *Muller* v. *Olin Mathieson Chemical Corp.*, 404

9. Spembly argues that the complaint does not allege an actual threat to sue in the United States. Paragraph 47, however, when read with ¶ 55, is adequate to allow proof of such a threat. In any event, the adequacy of the alleged controversy for purposes of the declaratory judgment action probably does not turn on the existence of the threat. *See Muller* v. *Olin Mathieson Chemical Corp.*, 404 F.2d 501 (2d Cir. 1968).

F.2d 501 (2d Cir. 1968). Compare *Gerber Scientific Instrument Co.* v. *Barr and Stroud, supra.*

Accordingly, Spembly's motion to dismiss is denied.