Harold G. KECKLER, Plaintiff,

v.

BROOKWOOD COUNTRY CLUB et al.,
Defendants.

No. 65 C 1019.

United States District Court
N. D. Illinois, E. D.

Nov. 29, 1965.

Philip H. Corboy, Chicago, Ill., for plaintiff.

Querrey, Harrow, Gulanick & Kennedy, Chicago, Ill., for defendant Versal, Inc.

DECKER, District Judge.

Plaintiff sues for damages for personal injuries suffered when a motorized golf cart tipped over and fell on him. The cart was manufactured by Versal, Inc., named as a defendant in Counts III and IV of the amended complaint. Count III charges negligence in the manufacture of the cart, and Count IV seeks recovery on a theory of strict liability in tort, in effect, an action on an implied warranty. Versal moves to quash service of process on it with respect to Count IV, although it submits to the jurisdiction of this Court with respect to Count III. A selective motion to quash, such as this one, is permissible where service is obtained under a "long arm" statute. National Gas Appliance Corp. v. AB Electrolux, 270 F.2d 472 (7th Cir. 1959). The motion to quash is granted.

Versal, an Indiana corporation with its principal place of business in Indiana, manufactured the cart in Indiana and sold it there to the Motorized Golf Company which, in turn, delivered it in Illinois to the Brookwood Country Club, the defendant in Counts I and II. For the purposes of this motion, I shall assume what defendant asserts and plaintiff does not deny, that Versal makes no sales or deliveries in Illinois and maintains no agents or offices in Illinois.

Service of process is governed by F.R.Civ.P. 4(d)(7) which provides that service may be obtained "in the manner prescribed by the law of the state in which the district court is held * *." The relevant Illinois law is the Illinois "long arm" statute, Ill.Rev.Stat. ch. 110 § 17, which provides for jurisdiction in Illinois courts and substituted service of process "as to any cause of action arising from * * * the commission of a tortious act within this State * * *." There are two questions to be answered in determining whether Versal may be served as to Count IV under the Illinois statute. The first is whether the "long arm" statute was intended to reach defendants such as Versal under the circumstances of this case—a question of state law. If Illinois does purport to exercise jurisdiction over Versal, then the question arises whether such an attempt violates the due process clause of the federal constitution. This is a question of federal law, and state authorities are not binding on it. Pulson v. American Rolling Mill Co., 170 F.2d 193 (1st Cir. 1948); Arrowsmith v. United Press International, 320 F.2d 219, 222 (2d Cir. 1963); Davis v. Asano Bussan Co., 212 F.2d 558, 562–563 (5th Cir. 1954); Aftanase v. Economy Baler Co., 343 F.2d 187, 190 (8th Cir. 1965).

I.

The first question is whether, as a matter of state law, the Illinois statute reaches Versal under Count IV. Versal concedes that service was proper under Count III, the negligence count, as it had to in light of Gray v. American

Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), which held that negligent manufacture of a product constitutes the doing of a "tortious act" in Illinois where the resulting injury occurs in Illinois. Accord, Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1961); McMahon v. Boeing Airplane Co., 199 F.Supp. 908 (N.D.Ill. 1961). The question is whether a different result is required when the basis of the action is strict liability in tort, or implied warranty.

Versal stakes its case on its characterization of the Count IV claim as a contract claim. However, the claim is not a traditional contract claim, and consequently, it is not governed by traditional rules for contract suits. A different sort of claim, not precisely within any traditional category, is involved here, and the task is to determine the appropriate treatment for it on its own merits.

While not a traditional tort claim, the claim here is more within the tort family than any other. Illinois courts have so labeled the implied warranty action. Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965); Greenwood v. John R. Thompson Co., 213 Ill.App. 371, 374 (1919). In light of the tendency of Illinois courts to label suits such as this with tort labels, there is no prima facie objection to including it within the "tortious act" language of the "long arm" statute.

Similarity of labels is not sufficient to close the issue, however, since there are differences between the usual tort suit and the suit based on strict liability in tort. These differences do not require a difference in treatment under the "long arm" statute, however. That statute states that certain relationships between nonresidents and Illinois are sufficient to permit local trial of nonresidents. That relationship is not distinguishable in a meaningful way for claims based on negligence and those based on strict liability in tort. In both cases, the bond between a nonresident and Illinois is the manufacture of a defective product at one end and a resulting injury at the

other. In both cases, the purpose of invoking this relationship is to provide a local forum for an injured person to be compensated for his injuries. That the injury-producing defect in the product results in one case from negligence and may exist without fault in the other, has no impact on the relationship between the nonresident and Illinois.

Given the holding in Gray, supra, a negligence case, and finding no legally tenable reason for not reaching the analogous result here, I hold that the Illinois "long arm" statute must be construed to reach nonresident defendant manufacturers in strict liability in tort cases arising out of Illinois injuries.

## II.

The question remains whether such service is permissible within the bounds of fairness established by the due process clause of the federal constitution, a question of federal law. The modern guiding standard has been evolving since International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). In McGee v. International Life Insurance Co., 355 U.S. 220, 222–223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), the Supreme Court took note of a trend "clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents." The Court added that "[i]n part this is attributable to the fundamental transformation of our national economy over the years."

The current controlling rule was succinctly summarized in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958):

"* * * [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240.

Once a proper affirmative jurisdictional act has occurred by which the defendant

may be said to have reached out to the forum state, the benefits and protections of local laws will be conclusively presumed. The question is whether Versal may be said to have done such an act, on the basis of the pleadings now before me.

Several courts have considered the question of what constitutes a sufficient act within the federal rule. There is little difficulty where the defendant has actually set foot in Illinois to commit the tort, even if that act is his only contact with the state. Nelson v. Miller, 11 Ill. 2d 378, 143 N.E.2d 673 (1957). The problem appears more difficult where, as here, the defendant has never physically entered the state. But the difficulty is more apparent than real.

In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199 (1957), jurisdiction was sustained where the only act by defendant aimed at the forum state was a single transaction by mail addressed to a forum state resident. Clearly within this rule is Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965), where service was permitted, under the Minnesota "long arm" statute, on a Michigan corporation which shipped small quantities of balers directly to Minnesota for a number of years. The Eighth Circuit observed that the defendant had "voluntarily" placed its products on the Minnesota market, derived benefit therefrom, and "reasonably could have anticipated that this activity would have consequences in this state."

Similarly, Roy v. North American Newspaper Alliance, 106 N.H. 92, 205 A.2d 844 (1964), permitted a libel suit in New Hampshire against a non-resident distributor of Drew Pearson's newspaper column. Chief Justice Kenison said that "[t]he defendant could reasonably anticipate that the sale, distribution and promotion of the Pearson column and other news features might entail libel actions * * *." The defendant had directly promoted the column to New Hampshire newspapers. Accord, Nixon

v. Cohn, 62 Wash.2d 987, 385 P.2d 305 (1963).

The cases indicate that jurisdiction depends in part on the reasonable anticipation of the defendant that he might be sued in the forum state, and the closeness of the bond between defendant and forum. In McGee, Aftanase, Roy and Nixon there is little difficulty in saying that the defendant should reasonably have anticipated suit in the forum state because in each case the defendant did one act which was directly aimed at the forum state. A letter was mailed to California in McGee, a baler was shipped to Minnesota in Aftanase, a column was offered to New Hampshire newspapers in Roy and an amusement machine was specifically built for use at the Seattle World's Fair in Washington, the forum state, in Nixon.

In Gray, the defendant did something a little different and a little broader. Rather than aiming at a single state, he aimed at all states by depositing his product in the national channels of commerce for distribution anywhere in the nation where an ultimate consumer could be found. Where a defendant does business of such volume, or with such a pattern of product distribution, that he should reasonably anticipate that his product may be ultimately used in any state, he has done the act required for the exercise of jurisdiction by the state where the injured user resides. The learned opinion in Gray stated this point as follows:

> "In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from

the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

"With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.

"As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communication have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States.

"Unless they are applied in recognition of the changes brought about by technological and economic progress, jurisdictional concepts which may have been reasonable enough in a simpler economy lose their relation to reality, and injustice rather than justice is promoted. Our unchanging principles of justice, whether procedural or substantive in nature, should be scrupulously observed by the courts. But the rules of law which grow and develop within those principles must do so in the light of the facts of economic life as it is lived today. Otherwise the need for adaptation may become so great that basic rights are sacrificed in the name of reform, and the principles themselves become impaired." Id. 22 Ill.2d at 441–443, 176 N.E.2d at 766.

Similar facts have produced similar results in other states, and the opinions of other courts echo the opinion in Gray. E. g., Andersen v. National Presto Industries, Inc., Iowa, 135 N.W. 2d 639, 643 (1965); Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963).[1] In each of these cases, the claim was for negligence. Here the claim is based on strict liability in tort. This difference, however, is insufficient to distinguish the cases. The manner in which the injury-producing defect came about has no impact on the question of jurisdiction: the jurisdictional act is not the creation of a defect, but the distribution of defective products in a national way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes. Nor can he deny the substantial interest of the injured person's state in providing a convenient forum for its citizens.

---

1. But cf. Velandra v. Regie Nationale Des Usines Renault, 336 F.2d 292 (6th Cir. 1964); Erlanger Mills v. Cohoes Fibre Mills, 239 F.2d 502 (4th Cir. 1956); Pendzimas v. Eastern Metal Products Corp., 218 F.Supp. 524 (D.Minn.1961).

Defendant may argue that while it may not be unfair to subject him to liability for negligence in any state, it is unfair to hold him under the extraordinary Illinois remedy of strict liability in tort. This is a question of choice of law, not properly before me on a motion to quash service. However, it is clear that if it may be said that the defendant should not be surprised to be sued in Illinois, there is no additional element of surprise in applying Illinois law. If contacts with Illinois are sufficient to sustain jurisdiction, they are sufficient to sustain application of Illinois law. The same rationale applies in both instances. The result is that a manufacturer who voluntarily places his product in the national channels of commerce not only submits himself to jurisdiction in all states where his product causes injury, but also to the law of those states.

When the plaintiff seeks to bring a defendant into court under the "long arm" statute, he must state sufficient facts in the complaint to support a reasonable inference that the defendant has done the required act. In Gray, the Illinois court explicitly disclaimed reliance on the existence of such facts in the record, and stated its willingness to presume that the defendant was engaged in a business of the kind necessary for jurisdiction. Similar presumptions have been indulged by the courts in Andersen, supra, and Ehlers, supra.

I think that jurisdiction must rest on a firmer foundation if the requirements of the due process clause are to be met. Entry into the manufacturing business is not enough. Rather, the complaint must affirmatively show that defendant's distribution volume or pattern is of the kind from which a reasonable inference may be drawn that the national channels of commerce have been chosen.

Count IV of the complaint here says too little. It alleges only that Versal "was engaged in the business of manufacturing and distributing for use by members of the golfing public a certain mechanical appliance known as a gasoline driven golf cart." From this bare allegation, the Court cannot reasonably infer that Versal does business in a way in which it has submitted to jurisdiction here. Consequently, service as to Count IV must be quashed.

I have entered an order today granting defendant's motion to quash as to Count IV, and giving plaintiff 5 days in which to amend his complaint to show the necessary jurisdictional facts.