Max F. MARSH, Plaintiff,

v.

TILLIE LEWIS FOODS, INC., Chicago & Northwestern Railroad Company, Atchison, Topeka & Santa Fe Railroad Company, and Chicago, Burlington & Quincy Railroad Company, Defendants.

CHICAGO & NORTHWESTERN RAILWAY COMPANY, Third-Party Plaintiff,

v.

NASH FINCH COMPANY, Third-Party Defendant.

Civ. 65–13W.

United States District Court
D. South Dakota, W. D.
May 25, 1966.

Costello, Porter, Hill, Banks & Nelson, Rapid City, S. D., for plaintiff, Max Marsh.

Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendant, Tillie Lewis Foods.

Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., for defendant, and third party plaintiff, Chicago & Northwestern Railroad Co.

Bangs, McCullen, Butler & Foye, Rapid City, S. D., for defendant, Atchison, Topeka & Santa Fe Railroad Co.

Kellar, Kellar & Driscoll, Lead, S. D., for defendant, Chicago, Burlington & Quincy Railroad Co.

Whiting, Lynn, Freiberg & Shultz, Rapid City, S. D., for third party defendant, Nash Finch Co.

## DECISION ON MOTION AND ORDER

BECK, Chief Judge.

Each of two defendants in this case, Tillie Lewis Foods, Inc., and Atchison, Topeka & Santa Fe Railroad Company, both foreign corporations, are challenging the court's jurisdiction on the ground that neither were reached by the used substituted service under Chapter 27 of the South Dakota Sessions Laws of 1961, which provides:

> "That section 11.2108 of the South Dakota Code of 1939 be, and the same is hereby, amended by adding thereto the following:

> If a foreign corporation makes a contract with a resident of South Dakota to be performed in whole or in part by either party in South Dakota, or if such foreign corporation commits a tort in whole or in part in South Dakota against a resident of South Dakota, such acts shall be deemed to be doing business in South Dakota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the Secretary of State of the State of South Dakota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the Secretary of State shall be of the same legal force and effect as if served personally within the State of South Dakota".

The record on the Atchison motion to quash consists of the allegations in the amended complaint, to the effect that

negligence by this defendant as it moved the shipment over its lines caused the freight within the box car to shift, creating a dangerous condition to persons unloading at the Nash Finch Warehouse Plant in Rapid City, South Dakota, that its lines extended to the loading point, but not into this state, and other proof in the form of two affidavits, which are as follows:

"T. M. Caiazza being first duly sworn deposes and says:

1. That he is Vice President of Traffic for the Atchison, Topeka, & Santa Fe Railroad Company which is a corporation organized under the laws of the state of Kansas with its principal office in Topeka, Kansas.

2. That such Company owns no property within the state of South Dakota; that it operates no service as a rail carrier or otherwise within the state of South Dakota. That it has no offices of any kind within the state of South Dakota; that it neither originates nor terminates any shipments in the state of South Dakota; that it maintains no service within the state of South Dakota for the tracing of shipments, handling of freight claims, nor for the collection or disbursements of funds.

3. That in the handling of carload shipments tendered to it by either a shipper or a connecting carrier, it supplies only the service of transportation; that carload shipments are not loaded by it, nor is loading supervised by it; that carload shipments are accepted by it after loading by the shipper on a bill of lading or way bill marked "shipper's count and load"; that the car is sealed by the shipper before delivery to it.

4. That it performs no acts relating to loading or carriage within the state of South Dakota; that it has no contracts relating to loading or carriage with any person, firm, or corporation within the state of South Dakota; that it exercises no privileges within the State of South Dakota.

5. That annexed hereto and marked Exhibit "A" is a map of Atchison, Topeka & Santa Fe Railroad Company.",

and

"W. A. McCullen being duly sworn on his oath doth depose and say:

(1) That he is one of the attorneys for the above-named defendant, Atchison, Topeka & Santa Fe Railroad Company. Affiant has examined the records of the office of Secretary of State at Pierre, South Dakota. That this defendant has not appointed the Secretary of State as its agent for service of process.

(2) That from the records furnished to your affiant by officials of Atchison, Topeka & Santa Fe Railroad Company, your affiant says that this defendant received from Tillie Lewis Foods, Inc., at Stockton, California, on January 25, 1962, a carload of canned and bottled fruits and tomato products. The carload had been loaded by Tillie Lewis Foods, Inc., under its own loading plan, supervised by its loading foreman, who affixed the seals to the car and delivered the same to this defendant. The carload was delivered to this defendant on a shipper's load and count. The shipment was consigned to Nash-Finch Company and was routed over this defendant's lines to Kansas City, Kansas, where it was delivered on January 29, 1962, to The Chicago, Burlington & Quincy Railroad Company, who in turn delivered it to the Chicago, Northwestern Railroad Company on January 31, 1962. That from the date of January 29, 1962, at Kansas City, Kansas, this defendant performed no act or services of any kind relating to such shipment.

(3) That your affiant is advised and informed that the car carrying this shipment was delivered to Nash-Finch in Rapid City, South Dakota, on February 6, 1962. That the plaintiff and one other employee entered the car and partially unloaded it and in the course of such unloading a tier of the cases of goods fell upon him."

On those facts it is Atchison's position that any and all of the alleged negligent acts insofar as they may have caused a shifting of the cargo and thereby effecting of a dangerous condition within the box car, were not within the state or against a resident, but outside, against no one in particular and that it for those reasons couldn't and wasn't reached by the substituted service of process.

Such a factual situation is not one which raises the question of compliance with minimal contacts in the forum state, such for instance as in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Ark-La Feed & Fertilizer Co. v. Marco Chemical Co., 292 F.2d 197 (8 Cir. 1961); Aftanase v. Economy Baler Co., 343 F.2d 187 (8 Cir. 1965); Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 15 L.Ed. 2d 39 (1965), and others, but one which goes to the question whether or not a forum state under such circumstances, has it within its powers by legislation or definition of "tort" to extend its jurisdiction to a foreign corporation and in the process to destroy the constitutional defense established in Pennoyer v. Neff (1878) 95 U.S. 714, 24 L.Ed. 565 and referred to in the Annotation, 25 A.L.R.2d 1202:

"\* \* \* that the due process clause of the Fourteenth Amendment is violated where a court renders a personal judgment against a nonresident individual defendant without having acquired jurisdiction over him, and that, as a matter of due process, it cannot acquire such jurisdiction merely by serving process upon him outside the forum or by publication."

The answer to the suggestion that the technological trend is away from Pennoyer v. Neff, supra, that it no longer has a place in our society of turbulent and accelerated business activities, that the impact thereof and perhaps the inference that the doctrine is no longer a part of our constitutional concepts, is in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, where the court under a comparable set of facts, involving contract however and not a tort, ended all speculations on the minimal contact cases foreclosing other available constitutional defenses guaranteed by the Fourteenth Amendment in its comments at pages 250–251, 78 S.Ct. at page 1238:

"In personam jurisdiction. Appellees' stronger argument is for in personam jurisdiction over the Delaware trustee. They urge that the circumstances of this case amount to sufficient affiliation with the State of Florida to empower its courts to exercise personal jurisdiction over this nonresident defendant. Principal reliance is placed upon McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. In McGee the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. *But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1 L.Ed.2d 1456. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to*

*do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him. See International Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154."* (Emphasis supplied) See also Mueller v. Steelcase, Inc., 172 F.Supp. 416 (D.Minn.1959) and Pendzimas v. Eastern Metal Products Corp., 218 F.Supp. 524 (D.Minn.1961).

■■ The place of the tort on the jurisdictional question is not established by rule or by definition. Instead, by evidence settling the actual locus of the causative elements. Tort defined as at the place where the injury takes place serves to fix the forum. The magic of that formula, however, goes no further. It functions within the state but not beyond.[1]

Constitutional barriers, were it otherwise, could be leveled at the option or whim of a state's legislature, with non-residents dependent on its perennial moods and by such fetish deprived of rights which are constitutionally guaranteed.[2]

■ Similarly, as to Tillie Lewis Foods' motion to quash, the court finds all of the acts in the chain of events leading to the injury to have been outside the state, not within, and no minimal contacts in South Dakota—although alluded to in the plaintiff's brief—to take it out from under the umbrella of constitutional protection.

Accordingly, on the motions to quash, it is ordered that both be, and they are hereby, granted, but with leave to the plaintiff to amend as against Tillie Lewis Foods, Inc., within twenty days from the date of the service of this decision and order.

---

1. Further on this point see Judge Nordbye's discussion in Mueller v. Steelcase, Inc., and in Pendzimas v. Eastern Metal Products Corp., supra, 218 F.Supp. at page 527: "But notwithstanding the views of the Minnesota Supreme Court in these recent cases, I am constrained, in light of the present factual situation, to adhere to the views expressed in the Mueller case, with some further amplification and possible clarification. In that case I stated that the defendant 'performed no tortious act in Minnesota.' In making that statement, I was fully aware that we do not have an actionable tort until someone is injured. The tort may be localized here because it was in this State that the last of the events took place which would make the tortfeasor liable. However, neither in the Mueller case nor in the instant situation did the defendant come into this State and perform a tortious act."

2. While the court is of the opinion that the Statement in Hanson v. Denckla, relied on here and approved in Rosenblatt v. American Cyanamid Co., supra, is expressive of the law in this field, it is to be noted that the authorities below the Supreme Court are not in accord, except insofar as they may be reconciled under the facts. On this point see Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957); Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); McMahon v. Boeing Airplane Co., 199 F.Supp. 908 (N.D.Ill.1961); Anderson v. Penncraft Tool Co., 200 F.Supp. 145 (N.D.Ill.1961), Keckler v. Brookwood Country Club, 248 F.Supp. 645 (N.D.Ill.1965); Hellriegel v. Sears Roebuck & Co., 157 F.Supp. 718 (N.D.Ill.1957), Judge Blackmun's able and exhaustive discussion in Aftanase v. Economy Bailer Co., supra, and "THE GROWTH OF LONG ARM", 1963 U.Ill. Law Form 533.