**Joseph DeJAMES, Plaintiff,**

v.

**MAGNIFICENCE CARRIERS, INC., Venture Shipping (Managers Ltd.) Nippon Yusen Kaisha, Hitachi Shipbuilding and Engineering Co., Ltd., and Usuki Tekkosho, Defendants.**

**Civ. A. No. 78–2892.**

United States District Court,
D. New Jersey.

June 18, 1980.

---

Stanley B. Gruber, Camden, N. J., for plaintiff.

Reiners & Davis by M. Jefferson Davis, Haddonfield, N. J., for defendant Hitachi Shipbuilding and Engineering Co., Ltd.

Christopher S. D'Angelo, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendants.

## OPINION

COHEN, Senior Judge:

Plaintiff, Joseph DeJames, a New Jersey citizen, has brought suit under the admiralty jurisdiction of the court, 28 U.S.C. § 1333, to recover damages for personal injuries suffered while working aboard the vessel M. V. Magnificence Venture. The injuries allegedly occurred on January 26, 1977, while the vessel was moored at a pier in Camden, New Jersey.

According to the pleadings defendant, Hitachi Shipbuilding and Engineering Company, Ltd. (Hitachi), entered into a contract in Japan with defendants Magnificence Carriers, Inc., Venture Shipping (Managers Ltd.), and Nippon Yusen Kaisha, the charterers of the vessel, M. V. Magnificence Venture, whereby Hitachi agreed to convert the vessel into an automobile carrier. Plaintiff alleges in his complaint that the conversion work performed by Hitachi was defective and was the direct cause of his injuries.

Presently before the court is a motion by Hitachi to dismiss the complaint against it for insufficiency of service and for lack of in personam jurisdiction. Hitachi contends that it does not maintain the requisite con-

tacts with New Jersey to enable this court to render a binding personal judgment against it. In support thereof, Hitachi has submitted an affidavit from Kiyoshi Ohno, manager of its ship repair business department located in Tokyo, Japan. According to the affidavit, Hitachi completed all work on the vessel at issue in its Japanese shipyard and had no further contact or involvement with the ship once it left Osaka, Japan. The affidavit further states that Hitachi does not maintain an office in New Jersey, nor does it have an agent of any type there or transact any business in the State.

■ At the outset it should be noted that when a federal court is asked to exercise personal jurisdiction over a defendant sued on a claim arising out of federal law, federal law under the due process clause of the fifth amendment is controlling. *See Honeywell, Inc. v. Metz Apparatewerke,* 506 F.2d 1137, 1143 (7th Cir. 1975); *Fraley v. Chesapeake and Ohio Railway Company,* 397 F.2d 1, 3–4 (3d Cir. 1968); *Alco Standard Corp. v. Benalal,* 345 F.Supp. 14, 24–25 (E.D.Pa.1972). That is not to say, however, that the analysis employed in diversity jurisdiction cases arising under the fourteenth amendment has no bearing on our decision in this case. In this regard, the Court of Appeals for the Third Circuit has remarked that the standard of due process set forth by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny is equally applicable in cases grounded on a federal claim. *See Fraley,* 397 F.2d at 3; *Goldberg v. Mutual Readers League, Inc.,* 195 F.Supp. 778, 782–83 (E.D.Pa.1961); *accord, Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 416 n.7 (9th Cir. 1977); *Honeywell, Inc.,* 506 F.2d at 1143.

In response to Hitachi's motion to dismiss, plaintiff argues first, that Hitachi's contacts with New Jersey are sufficient for the purposes of jurisdiction, and second, that where, as here, the court is to determine whether it has jurisdiction over a defendant who is being sued on a federal claim, it may consider not only the defendant's contacts with the forum state, but also the aggregate contacts of the defendant with the United States as a whole. We take up these arguments in turn.

## I.

### HITACHI'S "MINIMUM CONTACTS" WITH NEW JERSEY

In order to determine whether the court may acquire jurisdiction over Hitachi based on its New Jersey contacts, we must first examine the principles set forth in the *International Shoe* line of cases.

In *International Shoe,* the Supreme Court ruled that

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

326 U.S. at 316, 66 S.Ct. at 158.

*McGee v. International Life Insurance,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) further amplified the doctrine. In that case, suit was brought in California against a foreign insurance company on a policy issued to a California resident. The contract was delivered in California, the premiums were mailed from there, and the insured was living in California when he died. Although the defendant insurer did no other business in California, the Court ruled that it was subject to suit there based on the "substantial connection" of the contract itself to the State of California.

Finally, in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), the Supreme Court held that

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposely avails itself of

the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* at 253, 78 S.Ct. at 1239. The Court further elaborated that a court "does not acquire . . . jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation." *Id.*, at 254, 78 S.Ct. at 1240.

It is against this background that we must determine whether the presence of a ship in New Jersey upon which the defendant, Hitachi, had performed conversion work in Japan and the occurrence of an injury allegedly caused by that work, are sufficient bases upon which to subject Hitachi to suit in New Jersey.

Upon careful review of the record, the court finds that the degree and nature of Hitachi's contacts with New Jersey do not satisfy either the "minimum contacts" standard set forth in *International Shoe* or the "substantial connection" test advanced in *McGee.* Unlike the corporate defendants in those cases, the corporation in the case at bar, Hitachi, does no business in the forum state, does not maintain an office there, nor employ any marketing or distribution scheme to have its "products" sold in New Jersey.

Plaintiff, however, urges that the nature of Hitachi's business, which involves the building and conversion of merchant vessels to be used in trade all over the world, warrants the exercise by this court of jurisdiction over Hitachi. Specifically, plaintiff argues that a company which delivers ships into the stream of commerce should reasonably anticipate that its "product" will touch ports throughout the world and, concomitantly, should expect to be haled into court in any forum where a defect in one of its ships causes harm.

Among those cases relied upon by the plaintiff is *Benn v. Linden Crane Co.,* 326 F.Supp. 995 (E.D.Pa.1971). In *Benn,* a Swedish manufacturer had sold a crane f. o. b. Swedish port to a purchaser in Connecticut that had an exclusive distributorship of the manufacturer's products in the United States. Evidence was submitted indicating

that the defendant manufacturer knew some of its cranes would end up in Pennsylvania. Based upon these facts, the court held the defendant subject to jurisdiction in Pennsylvania in a products liability action, finding that it had made an "indirect shipment" of goods into Pennsylvania and was "doing business" there. *Id.* at 997. Plaintiff also cites *Smiley v. Gemini Investment Corp.,* 333 F.Supp. 1047 (W.D.Pa.1971). There, a federal court in Pennsylvania exercised jurisdiction over a California firearms importer who transferred the firearms in issue to a California distributor who, in turn, shipped the goods to Pennsylvania. The court reasoned that "the defendant, although not physically present in Pennsylvania, as an importer and distributor is an indispensable element in the distributive chain, and occupies a vital position of controlling the flow of such articles into the Commonwealth." *Id.* at 1048. Plaintiff also relies upon *Keckler v. Brookwood Country Club,* 248 F.Supp. 645 (N.D.Ill. 1965), which adopted the same "stream of commerce" rationale. In that case, indirect shipment of a golf cart by an Indiana corporation, which allegedly caused injury to the plaintiff in Illinois was held sufficient contact with Illinois to allow in personam jurisdiction there. In so ruling, the *Keckler* court remarked:

> The manner in which the injury-producing defect came about has no impact on the question of jurisdiction: the jurisdictional act is not the creation of a defect, but the distribution of defective products in a national way. When a manufacturer voluntarily chooses to sell his product in a way in which it will be resold from dealer to dealer, transferred from hand to hand and transported from state to state, he cannot reasonably claim that he is surprised at being held to answer in *any* state for the damage the product causes.

*Id.* at 649 (emphasis in original); *accord, Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir. 1980); *Blum v. Kawaguchi, Ltd.,* 331 F.Supp. 216 (D.Neb.1971); *Gill v. Fairchild Hiller Corp.,* 312 F.Supp. 916 (D.N.H.1970); *Certisimo v. Heidelberg Co.,* 122 N.J.Super.

1, 298 A.2d 298 (Law Div.1972), *aff'd*, 124 N.J.Super. 251, 306 A.2d 79 (App.Div.1973).

A close analysis of the "stream of commerce" decisions reveals that the manufacturers or distributors involved in those cases had all made a deliberate decision to market their products in the forum state either directly or indirectly by utilizing an interstate distribution network. While most of the parties involved did not themselves deal with anyone in the forum state, the courts took the position that the companies had placed their products into the forum by virtue of their knowing use of a distributive scheme. In the instant case, by contrast, there was no distributive or marketing scheme whereby Hitachi sought to have the vessel in question marketed and sold through channels to a new Jersey resident. Hitachi's sole involvement with the vessel was under a contract made in Japan between itself and the ship's owners under which Hitachi performed certain conversion work on the ship. It had no control over the ship once it left Japan. It made no decision to send the ship into New Jersey, nor did it seek to benefit from the laws of New Jersey or derive any profit there, either directly or indirectly.

As noted earlier, plaintiff urges that it is sufficient for jurisdictional purposes that Hitachi could anticipate a lawsuit anywhere in the world since its ships or ships upon which it worked travel globally. The Supreme Court recently addressed the same argument in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, a products liability action was instituted in Oklahoma by New York residents who were injured in Oklahoma while driving to a new home. The automobile in question was purchased in New York, and the defendants included the automobile retailer and its wholesaler, both of whom were New York corporations having no contacts with the State of Oklahoma. The Court held that due process would not permit Oklahoma to impose jurisdiction over the retailer or distributor. In so doing, it rejected the argument that jurisdiction was proper because the mobility of automobiles made it "foreseeable" that a purchaser in New York might drive the automobile through Oklahoma. *Id.* at 298, 100 S.Ct. at 567. The Court reasoned that

> the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. [Citations omitted.] The Due Process Clause, by ensuring the "orderly administration of the laws," *International Shoe Co. v. Washington*, 326 U.S. at 319, 66 S.Ct. at 160, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Id.*[1]

Thus, while it is true that "very minimal contacts are required to satisfy due process," *Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724, 730 (3d Cir. 1975), it is also clear that "it is a mistake to assume that . . . [there are no longer any] restrictions on the personal jurisdiction of state courts." *Hanson v. Denckla*, 357 U.S. at 251, 78 S.Ct. at 1238.

---

1. *See also Heckel v. Beech Aircraft Corp.*, 467 F.Supp. 278 (W.D.Pa.1979) (airplane crash held insufficient as sole basis for jurisdiction over the nonresident aircraft repair shop); *Kerrigan v. Clark Graveley Corp.*, 71 F.R.D. 480 (M.D.Pa. 1975) (occurrence of tractor accident in Pennsylvania does not, by itself, support the assertion of in personam jurisdiction over tractor repair shop in New Jersey); *Miller v. Cousins Properties Inc.*, 378 F.Supp. 711 (D.Vt.1974) (airplane accident insufficient contact with state to warrant jurisdiction over out-of-state corporation); *Knapp v. Franklin Coach Co.*, 365 F.Supp. 305 (W.D.Pa.1973) (automobile accident in Pennsylvania held insufficient contact with State to subject Ohio repair shop to jurisdiction there); *Uppgren v. Executive Aviation Services, Inc.*, 304 F.Supp. 165 (D.Minn.1969) (presence of allegedly defective helicopter in Minnesota causing injury to plaintiff within the state does not warrant exercise of jurisdiction over Maryland retail dealer in Minnesota). .

It is still required "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* at 253, 78 S.Ct. at 1240 (quoted in *World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567).

There has been no such act of Hitachi demonstrated in this case. Therefore, the motion to dismiss for lack of jurisdiction and for insufficiency of service, were it to be based solely on Hitachi's contacts with New Jersey, should be granted.

## II.

## THE "NATIONAL CONTACTS" APPROACH

Since Hitachi's contacts with New Jersey appear insufficient for the exercise of the court's jurisdiction, it is necessary to determine whether Hitachi's national contacts may be considered.[2]

The earliest case adopting the national contacts approach is *First Flight Co. v. National Carloading Corp.,* 209 F.Supp. 730 (E.D.Tenn.1962). That court held that the proper inquiry in determining personal jurisdiction in a case involving federal rights is one related to the contacts with the sovereignty in question, the United States. *Id.* at 738. The theoretical basis behind this approach is that the restrictions of the fourteenth amendment upon state jurisdiction have no application to a cause of action arising under federal law. Instead, the argument runs, the fifth amendment due process clause controls, and a defendant's national contacts may be aggregated to satisfy that standard. *See generally* Fink, *Indispensable Parties and the Proposed Amendment to Federal Rule 19,* 74 Yale L.J. 403, 443–44 n.155 (1965); Green, *Federal Jurisdiction In Personam of Corporations and Due Process,* 14 Vand.L.Rev. 967 (1961); von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1123–25 n.6 (1966);

Note, 9 Vand.J. of Transnat'l L. 435 (1976). As described by one court, "it is not the territory in which a court sits that determines the extent of its jurisdiction, but rather the geographical limits of the unit of government of which the court is a part." *Cryomedics, Inc. v. Spembly, Ltd.,* 397 F.Supp. 287, 291 (D.Conn.1975); *accord, Centronics Data Computer Corp. v. Mannesmann,* 432 F.Supp. 659, 663–64 & n.1 (D.N. H.1977) (quoting *First Flight,* 209 F.Supp. at 736–37); *Holt v. Klosters Rederi A/S,* 355 F.Supp. 354, 357 (W.D.Mich.1973); *Alco Standard Corp. v. Benalal,* 345 F.Supp. 14 (E.D.Pa.1972); *Edward J. Moriarity & Co. v. General Tire & Rubber Co.,* 289 F.Supp. 381, 390 (S.D.Ohio 1967).

Although the fifth amendment test is sometimes expressed in more general "fairness" terms, *see, e. g., Honeywell, Inc.,* 509 F.2d at 1143 (citing *Galvan v. Press,* 347 U.S. 522, 530, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954)), the *International Shoe* line of cases (discussed *supra* in Part I) provides the foundation for the test, and the analysis is substantially similar. *See Honeywell, Inc.,* 509 F.2d at 1143; *First Flight,* 209 F.Supp. at 738 (E.D.Tenn.1962). Accordingly, the standard which has been applied by those courts adopting the national contacts approach is whether defendant "has such minimum contacts with the United States that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Holt v. Klosters Rederi A/S,* 355 F.Supp. at 357 n.2 (quoting *First Flight,* 209 F.Supp. at 738); *See Engineering Equipment Co. v. S. S. Selene,* 446 F.Supp. 706, 709 (S.D.N.Y.1978).

One of the principal policy considerations underlying the national contacts theory is the belief that in this age of multinational conglomerates a corporation headquartered in a foreign land is no more inconvenienced by a trip to one state than to another. *E. g., Centronics Data Computer Corp. v. Man-*

---

**2.** In the course of discovery, plaintiff had issued interrogatories to Hitachi, requesting information on the extent of its nationwide contacts. When Hitachi objected that the interrogatories were too burdensome, plaintiff agreed to limit the inquiry to Hitachi's New Jersey contacts. As a result, no discovery has ever been done on the extent, if any, of Hitachi's national contacts.

nesmann, A.G., 432 F.Supp. at 663; Cryomedics, Inc. v. Spembly, Limited, 397 F.Supp. at 291. It should be noted that the growing nationalization of commerce in this country and the expansion in mobility were most recently acknowledged as jurisdictional considerations by Justice Brennan in World-Wide Volkswagen Corp., 444 U.S. at 308 & n.13, 100 S.Ct. at 585 & n.13 (1980) (Brennan, J., dissenting). Another reason for the application of the theory is the possibility that a foreign corporation "could commit serious torts or contract breaches without ever having enough contacts with any one forum to give those injured an opportunity to seek redress." Centronics Data Computer Corp. v. Mannesmann, A.G., 432 F.Supp. at 664 (noting Engineered Sports Products v. Brunswick Corp., 362 F.Supp. 722, 728 (D.Utah 1973)). In this connection, one commentator in favor of the national contacts approach has argued that the burden of forcing an alien to defend an action in a distant land must be balanced against that of a plaintiff for whom no other remedy might exist. Note, 9 Vand.J. of Transnat'l L. 435, 444 (1976). Finally, it has been urged that "[i]f the aggregate contacts approach were common, substantially greater justice might be achieved as alien defendants are forced as a condition of being allowed to cultivate and reap profits from a foreign country's market, to recognize their responsibility to the foreign country that consumes their product." Id.

Since the First Flight opinion discussed the national contacts theory in 1962, several jurisdictions have considered the approach in federal question cases. But most courts which have analyzed the theory have refused to apply it and have instead looked solely to state contacts as a basis for jurisdiction. While these courts generally acknowledge the logic of inquiring into a defendant's contacts with the United States where the suit is based upon a federally created right, they reason that they must have a federal rule or statute authorizing nationwide or worldwide service of process before doing so. See, e. g., Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 418 (9th Cir.

1977) (refused to aggregate national contacts since Lanham Act did not grant the court broad service of process powers); Superior Coal Co. v. Ruhrkohle, A. G., 83 F.R.D. 414, 418–20 (E.D.Pa.1979) (rejected national contacts theory in action instituted under the Clayton and Anti-Dumping Acts); Harem-Christensen Corp. v. M. S. Frigo Harmony, 477 F.Supp. 694, 697 n.1 (S.D.N.Y.1979) (service of process in admiralty action must satisfy prerequisites to application of New York long-arm statute); Amburn v. Harold Forster Indus., Ltd., 423 F.Supp. 1302 (E.D.Mich.1976) (court limited to considering contacts with state in patent infringement action in the absence of authority for nationwide service of process); Graham Engineering Corp. v. Kemp Products Ltd., 418 F.Supp. 915, 919–20 (N.D. Ohio 1976) (same); Ag-Tronic, Inc. v. Frank Pavior Ltd., 70 F.R.D. 393, 401 (D.Neb.1976) (same); Stanley v. Local 926, International Union of Operating Engineers, AFL–CIO, 354 F.Supp. 1267, 1271 n.3 (N.D.Ga.1973) (must look to state contacts in action brought under the Civil Rights Act and the Manpower Development and Training Act of 1962); Edward J. Moriarity & Co. v. General Tire & Rubber Co., 289 F.Supp. 381, 389–90 (S.D.Ohio 1967) (must meet qualifications for state long-arm statute in action brought under the Sherman Act); Scott v. Middle East Airlines Co., S.A., 240 F.Supp. 1, 3–4 (S.D.N.Y.1965) (state contacts and not just national contacts required for jurisdiction in admiralty action brought under Death on the High Seas Act); Goldberg v. Mutual Readers League, Inc., 195 F.Supp. 778, 782–83 (E.D.Pa.1961) (apply state contacts analysis in action arising under Fair Labor Standards Act).

■ A review of the pertinent case law reveals that the overwhelming majority of courts which have considered the national contacts approach have rejected its application in the absence of statutory authority for service of process. After careful analysis of the rationale underlying these decisions, the court finds that it must join their ranks. We, therefore, reject plaintiff's contention in the instant matter that defend-

ant Hitachi's national contacts may be aggregated as a basis for the exercise of jurisdiction over Hitachi.

The court's opinion in the case at bar, however, should not be construed as a total rejection of the national contacts theory. On the contrary, the court believes that it is not unfair nor unreasonable as a matter of due process to consider the nationwide contacts of an alien defendant in determining whether jurisdiction exists. As noted by Judge Wilson in his opinion in *First Flight,*

> One fundamental principle of the Anglo-American law of jurisdiction is that a sovereignty has personal jurisdiction over any defendant within its territorial limits, and that it may exercise that jurisdiction by any of its courts able to obtain service upon the defendant.

209 F.Supp. at 736. This court also believes that many good policy reasons exist for applying the national contacts theory, particularly in those federal question cases involving alien defendants. In addition to affording greater protection to the rights of domestic plaintiffs, the national contacts approach would promote greater uniformity of treatment in actions involving federal rights since the jurisdiction of the federal court would not depend upon the liberality or conservatism of the laws of the state in which the court sits. *See Hartley v. Sioux City & New Orleans Barge Lines, Inc.,* 379 F.2d 354, 356 n.2 (3d Cir. 1967) (by implication); Bohmann, *Applicability of Shaffer to Admiralty In Rem Jurisdiction,* 53 Tul.L. Rev. 135, 161–62 (1978); Note, 9 Vand.J. of Transnat'l L. 435 (1976).

We also recognize, however, that the United States has by the enactment of the Federal Rules of Civil Procedure imposed restrictions upon the exercise of personal jurisdiction by its courts. One such restriction, relevant to the case at bar, is that

imposed by Rule 4(e), which provides that when substituted service is made pursuant to a state's long-arm statute, the service be made "under the circumstances and in the manner prescribed in the statute." Fed.R. Civ.P. 4(e)(2). That portion of the Rule has been interpreted to mean that service under a valid state long-arm statute in a federal court is only possible in those situations where the in-state activities of the defendant would be sufficient to invoke the long-arm statute had the defendant been sued in state court. *See, e. g., Hydraulics Unlimited Mfg. Co. v. B/J Manufacturing Co.,* 449 F.2d 775, 777 (10th Cir. 1971); *Upper Mississippi Towing Corp.,* 423 F.2d 535, 537 n.2 (3d Cir. 1970) (quoting *Hartley v. Sioux City and New Orleans Barge Lines, Inc.,* 379 F.2d at 356 & n.2 (3d Cir. 1967)); *Fraley v. Chesapeake and Ohio Railway Co.,* 397 F.2d 1 (3d Cir. 1968); *Amburn v. Harold Forster Indus., Ltd.,* 423 F.Supp. 1302, 1305 (E.D.Mich.1976); *see generally* 4 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1075, at 313 (2d ed. 1969). Thus, where service of process is effected by means of a state statute, a federal court is forced to look to the state in which the district is located to determine whether jurisdiction may be asserted over an out-of-state defendant.[3]

While the Third Circuit has never fully addressed the national contacts theory in any opinion, it has considered whether state statutory procedures for effectuating service of process may serve to limit the jurisdiction of a federal court. In *Hartley v. Sioux City & New Orleans Barge Lines, Inc.,* a seaman brought suit in Pennsylvania against a foreign corporation under the Jones Act and in admiralty for injuries sustained in an accident which occurred on a river in Illinois. As a first step, the court recognized that federal courts considering

---

**3.** According to one commentator, state law should always control the exercise of jurisdiction when a state statute is used pursuant to Rule 4(e):

> Although the opposite result has some appeal in that it permits effectuation of federal interests in a broader range of suits, it is inconsistent with the apparent intent of the drafts-

men of Rule 4(e) to use state provisions for service in order to permit the federal courts in a state to hear those cases that could be brought in the state's own courts when a basis for asserting federal subject matter jurisdiction exists.

4 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1075, at 313 (2d ed. 1969).

federal questions may exercise jurisdiction subject only to the restrictions imposed by the due process clause of the fifth amendment. 379 F.2d at 356. The court then proceeded to rule, however, that where service of process has been performed pursuant to a state statute, "the adequacy of service of process must be determined by that rule." *Id.* (footnote omitted). The court then looked to state law in determining whether it could exercise jurisdiction in the case. Thus, the court recognized that when state procedures are employed, the jurisdiction of a federal court in a federal question case is limited by the law of the forum state. *See id.* & n.2.

Plaintiff has urged the court to exercise jurisdiction on the ground that New Jersey's long-arm rule, R. 4:4–4, N.J.Court Rules (the rule employed in the case at bar) has been construed as extending New Jersey's jurisdictional reach to its constitutional limits. *See Avdel v. Mecure,* 58 N.J. 264, 268, 277 A.2d 207, 209 (1971). The power of the State of New Jersey, however, is still limited by the due process requirements of the fourteenth amendment. There must still be some contact of a defendant with the forum state.

■ It is important to note that our rejection of the national contacts approach in the instant matter is limited to those factual situations where service of process must be made pursuant to a state statute. We believe that where service can be effected through wholly federal means, a defendant's national contacts may still be a viable basis for jurisdiction in a federal question case. Thus, for instance, where Congress has provided for nationwide service of process, we can perceive of no impediment to the application of the national contacts theory with the exception of the fifth amendment's "fairness" standard. There would be no need to make reference to any state law in making service, see Rule 4(f), and concomitantly, no need to consider any fourteenth amendment or state restrictions on that service. *See, e. g., Alco Standard Corp. v. Benalal,* 345 F.Supp. 14, 25 (E.D.Pa. 1972) (In action brought under Securities

and Exchange Act, which provides for nationwide service of process, court ruled that since the Act is national in scope, the court's jurisdictional inquiry should focus on a defendant's national contacts.) The same result would also seem appropriate when service of process is made pursuant to Rule 4(d)(3), which provides for service "[u]pon a . . . foreign corporation . . . by delivering a copy of the summons and of the complaint to . . . [an] agent authorized by appointment or by law to receive service of process". Rule 4(d)(3), like Rule 4(f), provides for a strictly federal method of service and, thus, like that Rule, does not implicate any state law limitations on jurisdiction. *See First Flight,* 209 F.Supp. at 735; *see also Angel v. Bullington,* 330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832 (1947); *Hartley v. Sioux City and New Orleans Barge Lines, Inc.,* 379 F.2d at 356.

Since Congress has not enacted a federal statute authorizing nationwide service of process in admiralty actions, and since the district court's power in the present matter is therefore limited by the Federal Rules of Civil Procedure and, through them, the laws of New Jersey, we find the relevant jurisdictional inquiry to be the extent of the defendant Hitachi's contacts with New Jersey. And since we have determined that Hitachi lacks sufficient contacts with New Jersey to satisfy the jurisdictional standards set forth in *International Shoe* and its progeny, defendant Hitachi's Motion to Dismiss must be granted.